Argued April 28, reversed and remanded July 5, 1978

# WILLIAMS, *Appellant,*
### *v.*
# ZACHER, *Respondent.*
## (No. 99035, CA 9724)
581 P2d 91

Karol Wyatt Kersh, Salem, argued the cause and filed the brief for appellant.

No appearance for respondent.

Before Johnson, Presiding Judge, and Gillette and Roberts, Judges.

JOHNSON, P. J.

**JOHNSON, P. J.**

The father appeals the trial court's dismissal under the Uniform Child Custody Jurisdiction Act, ORS 109.700 to 109.930, of his petition for custody of his four-year-old-son. There was no hearing. The trial court's order was based upon information taken from the pleadings and affidavits supplied by the parties. The relevant facts that we are able to discern from this sparse record are as follows:

The father and mother were married in 1973, which was also the year of the child's birth. The child was born in Denver, Colorado, and the parties lived in Denver until August, 1975. At that time they separated and the father took the child to Utah and later to Wyoming. In December, 1975, the father and the child moved to Oregon where they lived with the father's parents. According to the mother's affidavit, the father forcibly took the child from her and secreted him in Oregon. Following the separation, the mother instituted dissolution proceedings in Colorado. A decree of dissolution was entered in Colorado on July 8, 1976, although the father was never personally served. The father was not personally served because the mother could not locate him. The Colorado court did not make an award of custody at the time of the dissolution decree because the child was out of the state, but stated in its decree that it was reserving jurisdiction to make a custody award at a later date.

On January 12, 1977, a private investigator hired by the mother and the mother's present husband forcibly entered the Oregon residence where the child was living and forcibly removed him. The mother, her husband, the investigator and the child immediately flew to Denver. On the next day, a hearing was held before the Colorado court which then awarded custody to the mother. According to the mother's affidavit, to which a copy of the Colorado custody decree was attached, the father moved to quash the custody order, the motion was denied, and the father has appealed

the denial. The father then instituted this proceeding on February 15, 1977, while the Colorado appeal was pending. The wife was served on March 5, 1977, in Jerome County, Idaho, where she and the child now reside. The mother moved to quash the father's petition because of the pending Colorado proceeding. The trial court denied the mother's motion for the reason that:

> "* * * Colorado, the State which entered the initial custody decree concerning this child * * * does not now, whether or not at any time it did, have jurisdiction, pursuant to the Uniform Child Custody Jurisdiction Act, to make a custody determinatiion concerning the said child, and that the State of Oregon now has such jurisdiction as to allow this court to enter a *modification* decree replacing the Colorado decree on record and which has been made a part of this proceeding * * *." (Emphasis supplied.)

The trial court then ordered that the father's petition be heard as if the petition were for an initial decree, without proof of change of circumstances, on the ground that the Colorado decree, on its face, failed to show that the Colorado court had adequate information to determine the best interests of the child.

■■ Having determined it could exercise jurisdiction, the trial court then declined to do so on the ground that the father had wrongfully taken the child from Colorado and secreted him in Oregon. The court relied on ORS 109.780(1) which provides:

> "If the petitioner for an *initial* decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct the court may decline to exercise jurisdiction if this is just and proper under the circumstances." (Emphasis supplied.)

We agree with the trial court that the father's conduct amounted to either "wrongfully" taking the child or "similar reprehensible conduct" to satisfy the statutory condition. The purpose of ORS 109.780(1) is to codify the clean-hands doctrine. The term "wrongfully" encompasses unconscionable conduct even though

the conduct does not involve the violation of any legal right or duty. *See Commissioners' Note,* 9 ULA 116, § 8 (Master ed 1973).[1] A more difficult question is whether this was a petition for an "initial decree" under ORS 109.780(1) in view of the Colorado decree. A strong argument can be made in favor of the trial court's conclusion that the Colorado decree is void for lack of jurisdiction, but we do not need to reach that question.[2] We are convinced that even if this is in effect a petition for an initial decree, and in spite of the father's reprehensible conduct, the trial court should not have declined jurisdiction considering what is "just and proper under the circumstances."

---

[1] *Commissioners' Note,* 9 ULA 116, § 8 (Master ed 1973) provides in pertinent part:

"Subsection (a) extends the clean hands principle to cases in which a custody decree has not yet been rendered in any state. For example, if upon a de facto separation the wife returned to her own home with the children without objection by her husband and lived there for two years without hearing from him, and the husband without warning forcibly removes the children one night and brings them to another state, a court in that state although it has jurisdiction after 6 months may decline to hear the husband's custody petition. 'Wrongfully' taking under this subsection does not mean that a 'right' has been violated—both husband and wife as a rule have a right to custody until a court determination is made—but that one party's conduct is so objectionable that a court in the exercise of its inherent equity powers cannot in good conscience permit that party access to its jurisdiction."

[2] We are reluctant to decide in this case whether or not this is a petition for an "initial" decree because it would require an interpretation of ORS 109.830 which provides:

"The court of this state shall recognize and enforce an initial or modification decree by a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with ORS 109.700 to 109.930 or which was made under factual circumstances meeting the jurisdictional standards of ORS 109.700 to 109.930, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of ORS 109.700 to 109.930."

A literal reading of that statute precludes a collateral attack on the Colorado decree since Colorado has also enacted the Uniform Child Custody Jurisdiction Act, Session Laws of Colorado 1973, ch 163, and thus the Colorado court "assumed jurisdiction under statutory provisions substantially in accordance with ORS 109.700 to 109.930." We are not certain that ORS 109.830 compels such a result and do not believe that this is an appropriate case for interpreting that statute.

■    However, before discussing the relevant circum-
stances, it is necessary to consider other possible
grounds on which jurisdiction might have been de-
clined.

ORS 109.760(1) provides:

> "A court of this state shall not exercise its jurisdiction
> under ORS 109.700 to 109.930 if at the time of filing the
> petition a proceeding concerning the custody of the child
> was pending in a court of another state *exercising
> jurisdiction substantially in conformity with ORS
> 109.700 to 109.930,* unless the proceeding is stayed by
> the court of the other state because this state is a more
> appropriate forum or for other reasons." (Emphasis
> supplied.)

Although there was an appeal pending in the Colorado
courts, that state was not exercising jurisdiction "sub-
stantially in conformity with ORS 109.700 to
109.930." Colorado was not the child's home state.
ORS 109.730(1)(a); 109.710(5).[3] Neither the father nor
the child had lived in Colorado since 1975 and thus
that state did not have sufficient contacts to assume
jurisdiction under the provisions of ORS 109.730
(1)(b).[4] Furthermore, it is clear that the hearing was

---

[3] ORS 109.730(1)(a) provides:

"A court of this state which is competent to decide child custody
matters has jurisdiction to make a child custody determination by
initial or modification decree if:

"(a) This state is the home state of the child at the time of
commencement of the proceeding, or had been the child's home state
within six months before commencement of the proceeding and the
child is absent from this state because of his removal or retention by a
person claiming his custody or for other reasons, and a parent or person
acting as parent continues to live in this state * * *."

ORS 109.710(5) provides:

" 'Home state' means the state in which the child, immediately
preceding the time involved, lived with his parents, a parent, or a
person acting as parent, for at least six consecutive months, and, in the
case of a child less than six months old, the state in which the child
lived from birth with any of the persons mentioned. Periods of
temporary absence of any of the named persons are counted as part of
the six-month or other period."

[4] ORS 109.730(1)(b) provides:

"A court of this state which is competent to decide child custody
matters has jurisdiction to make a child custody determination by

conducted and the custody decree entered by the Colorado court without complying with the notice requirements of ORS 109.750.[5] Finally, at the time this proceeding was commenced, none of the parties resided in Colorado.

Another basis for declining jurisdiction is *forum non conveniens* under ORS 109.770, which in pertinent part provides:

"(1) A court which has jurisdiction under ORS 109.700 to 109.930 to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the

initial or modiciation decree if:

"\* \* \* \* \*

"(b) It is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships \* \* \*."

[5] ORS 109.750 provides:

"(1) Notice required for the exercise of jurisdiction over a person outside this state shall be given in a manner reasonably calculated to give actual notice, and may be:

"(a) By personal delivery outside this state in the manner prescribed for service of process within this state;

"(b) In the manner prescribed by the law of the place in which the service is made for service of process in that place in an action in any of its courts of general jurisdiction;

"(c) By any form of mail addressed to the person to be served and requesting a receipt; or

"(d) As directed by the court, including publication, if other means of notification are ineffective.

"(2) Notice under this section shall be served, mailed, delivered or last published at least 20 days before any hearing in this state.

"(3) Proof of service outside this state may be made by affidavit of the individual who made the service, or in the manner prescribed by the law of this state, or the order pursuant to which the service is made or the law of the place in which the service is made. If service is made by mail, proof may be a receipt signed by the addressee or other evidence of delivery to the addressee.

"(4) Notice is not required if a person submits to the jurisdiction of the court."

[ 135 ]

circumstances of the case and that a court of another state is a more appropriate forum.

"(2) A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child.

"(3) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

"(a) If another state is or recently was the child's home state;

"(b) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;

"(c) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

"(d) If the parties have agreed on another forum which is no less appropriate; and

"(e) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in subsections (1) and (2) of ORS 109.720.

"* * * * *."

The record in this case indicates that while in some respects Oregon may not have been a convenient forum, there was not a "more appropriate forum" in another state. For essentially the same reasons, the trial court should not have declined jurisdiction under ORS 109.780(1) discussed *supra.* The facts and reasons upon which we rely are as follows:

1. Oregon was the child's home state. ORS 109.730(1)(a). *See* footnote 3. The father and child had lived in Oregon since 1975 and had significant contacts here. ORS 109.730(1)(b). *See* footnote 4. Indeed, under the standards of the Uniform Child Custody Jurisdiction Act Oregon may have been the only state which had jurisdiction to determine custody.

2. It is doubtful that Colorado ever had jurisdiction to determine custody and thus its initial decree may be

subject to collateral attack. The exercise of jurisdiction by Colorado was not in substantial conformity with the Uniform Child Custody Jurisdiction Act.

3. The mother and child had moved to Twin Falls, Idaho sometime between January 13, 1977, the date of the Colorado decree, and February 17, 1977, the date when this proceeding was commenced. Idaho is not the home state of the child. ORS 109.730(1)(a). *See* footnote 3. The mother and child had lived in Idaho for no longer then one month and thus it is at least questionable that Idaho had significant contacts to acquire jurisdiction under that state's counterpart to ORS 109.730(1)(b). *See* footnote 4. The mother also indicated in her affidavit that she may move back to Colorado.

4. The mother's affidavit indicates that the husband forcibly took the child in 1975 and secreted him in Oregon for almost two years. The record also establishes that the wife's agents forcibly gained custody of the child in 1977, removed the child from this state to Colorado, and then without notice to anyone took the child to Idaho. Suffice it to say neither party can come into any court with clean hands. Assuming the allegations of the wife's affidavit are true, there is every reason to believe that both parties will continue to pursue an unconscionable course of action.

The child's interests dictate that there should be a legal determination of custody, visitation and attendant rights. In *Settle and Settle,* 276 Or 759, 770, 556 P2d 962 (1976), the court stated:

> "A close reading of the Act discloses a schizophrenic attempt to bring about an orderly system of decision and at the same time to protect the best interests of the children who may be immediately before the court. When put to the test of a factual situation presenting an irreconcilable conflict between those two interests, we read the Act as making predominant the best interests of the children before the court. It is our conclusion that the

best interests of the children require a hearing at some time on the full facts, that in this case the present proceeding is the only opportunity which is likely ever to exist * * *."

The trial court should have exercised jurisdiction. Having reached that conclusion it is necessary that we provide some guidance to the trial court on remand as to the applicability of the change of circumstance rule to the facts, as well as how to proceed if events have occurred during the pendency of the appeal that place the case in a different posture.

6.   We have already stated that it is unnecessary to reach the question of whether the petition is for an initial decree or a modification of the Colorado decree. Even if the petition is treated as a modification the change of circumstance rule has no application to this case because the mother concedes there has never been a hearing on the merits concerning custody. *Brooks v. Brooks,* 20 Or App 43, 53-54, 530 P2d 547, *rev den* (1975).

The trial court's order dismissing the father's petition was entered on November 14, 1977. Because of the passage of nearly six months it may be that another state is now competent to exercise jurisdiction and such state may be a more convenient forum for determining custody under ORS 109.770.[6] Upon remand we do not intend to preclude the trial court from

---

[6]ORS 109.770 provides:

"(1) A court which has jurisdiction under ORS 109.700 to 109.930 to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

"(2) A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child.

"(3) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

declining jurisdiction under that statute if there has been in fact a change in events since the trial court's original decision. The thrust of our decision here is that the Uniform Child Custody Jurisdiction Act

"(a) If another state is or recently was the child's home state;

"(b) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;

"(c) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

"(d) If the parties have agreed on another forum which is no less appropriate; and

"(e) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in subsections (1) and (2) of ORS 109.720.

"(4) Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.

"(5) If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, or it may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions which may be just and proper, including the condition that a moving party stipulate his consent and submission to the jurisdiction of the other forum.

"(6) The court may decline to exercise its jurisdiction under ORS 109.700 to 109.930 if a custody determination is incidental to an action for divorce or another proceeding while retaining jurisdiction over the divorce or other proceeding.

"(7) If it appears to the court that it is clearly an inappropriate forum it may require the party who commenced the proceedings to pay, in addition to the costs of the proceedings in this state, necessary travel and other expenses, including attorney fees, incurred by other parties or their witnesses. Payment is to be made to the clerk of the court for remittance to the proper party.

"(8) Upon dismissal or stay of proceedings under this section the court shall inform the court found to be the more appropriate forum of this fact, or if the court which would have jurisdiction in the other state is not certainly known, shall transmit the information to the court administrator or other appropriate official for forwarding to the appropriate court.

"(9) Any communication received from another state informing this state of a finding of inconvenient forum because a court of this state is the more appropriate forum shall be filed in the custody registry of the appropriate court. Upon assuming jurisdiction the court of this state shall inform the original court of this fact."

mandates in the best interests of the child that there be a prompt hearing on the merits and a determination of custody by a court of competent jurisdiction. While it may be that another court has become competent to exercise jurisdiction, that fact alone would not justify a dismissal under ORS 109.770 considering the circumstances presented here. There must be an assurance that the other state will in fact exercise jurisdiction and that it is a more convenient forum under the standards established in ORS 109.770 (3)(a), (b), (c), (d) and (e). The procedure for accomplishing those objectives is set forth in ORS 109.770(4) and (5). *See* footnote 5. The case is remanded for further proceedings in accordance with this opinion.

Reversed and remanded.