Argued and submitted at Pendleton May 5,
affirmed August 4, reconsideration denied September 11,
petition for review allowed December 23, 1980

In the Matter of the Custody of
Jennifer Lynn Ross, a minor child,
GRUBS,
*Appellant,*
*v.*
ROSS,
*Respondent.*

(No. UCCJ 7, CA 15346)

614 P2d 1225

Leeroy O. Ehlers, Pendleton, argued the cause and filed the brief for appellant.

Gary R. Luisi, Hermiston, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Warden and Warren, Judges.

WARDEN, J.

JOSEPH, P.J., concurring.

**WARDEN, J.**

This case involves a dispute between a mother and father over the custody of their daughter, now four and one-half years old. The circuit court, proceeding under the Uniform Child Custody Jurisdiction Act (UCCJA), awarded custody to father and mother appeals.

The child was born in Billings, Montana, January 19, 1976. Her parents were married two months later. The parties separated August 26, 1977. Two days later, while father had the child temporarily in his custody, he left Billings with the child and an 18-year old woman he had known about a month. He married this woman shortly before the Oregon custody hearing.

Mother filed for divorce in Montana on August 30, 1977. Service was made by publication, father's whereabouts being unknown. Mother was granted a divorce by default and awarded custody of the child on October 26, 1977. Unable to locate the child, mother, in December, 1977, initiated criminal charges against father for custodial interference.

Meanwhile father, his girlfriend and the child had settled in Milton-Freewater, Oregon, in October, 1977. Father had contacted mother to assure her of the child's safety and to tell her he intended to keep the child with him. He was aware the mother was taking steps to gain physical custody of the child, but he made no move to seek lawful custody himself.

Father continued to make occasional phone calls to mother to assure her of the child's welfare, but he never disclosed the child's location. Mother had no knowledge of the child's whereabouts until May 15, 1979, when father was arrested in Milton-Freewater for custodial interference.

Mother then filed this suit in Umatilla County Circuit Court, petitioning for enforcement of the

Montana decree. Father's answer prayed the Oregon court to assume jurisdiction and hold a full hearing to determine custody of the child and asked that custody be awarded to him.

Following a hearing on May 18, 1979, the court concluded that Oregon has jurisdiction and that an Oregon court should exercise its jurisdiction and hold a custody hearing. The court denied mother's petition for enforcement of the Montana decree. The custody hearing was held on July 11 and 12, 1979, and on July 23 the court awarded custody of the child to father.

Mother's contentions on appeal are that the Oregon court did not have jurisdiction to determine custody, or, if it did, that it should not have exercised it. She further contends that any determination of custody should have required proof of a change of circumstances since the Montana decree which would justify modification of that decree. Finally, she contends that even if the Oregon court had jurisdiction and the hearing in the Oregon court is considered the initial hearing on the issue of custody, the court erred in awarding custody to father.

Jurisdiction under the UCCJA is determined by ORS 109.730, which provides in pertinent part:

"A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

"(a)  This state is the home state of the child at the time of commencement of the proceeding* * *;[or]

"(b)  It is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with the state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;"

[634]

The child has lived in Oregon since October, 1977, and, therefore, this is her home state.[1] Also, the child and her father have significant connections with this state. At the time of the hearing she had lived with her father in Oregon about 20 months of her three and one-half years, and there is in this state substantial evidence of her care, protection, training, and personal relationships. Oregon thus has jurisdiction.

Having determined that a court of this state has jurisdiction, the next question is whether the court should have exercised that jurisdiction. There are a number of statutory considerations; the first is ORS 109.840(1), which provides that:

> "If a court of another state has made a custody decree, a court of this state shall not modify that decree unless it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with ORS 109.700 to 109.930 or has declined to assume jurisdiction to modify the decree and the court of this state has jurisdiction."

Therefore, we must look again to ORS 109.730(1)(a) and (b) to determine if Montana has jurisdiction.

■ Montana is no longer the home state of the child, nor are there now significant connections with Montana to enable a court of that state to assume jurisdiction. Though mother has a connection with Montana and there is available in that state evidence of the future care and protection with which the mother could provide the child, the child has not been in Montana since September, 1977. The only "significant connection" the child now has with the state is the October, 1977, custody decree. That connection is weakened by the failure of the decree to take effect and by the passage of time. *See Settle and Settle,* 276

---

[1] ORS 109.710(5): " 'Home state' means the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as a parent, for at least six consecutive months* * *."

Or 759, 767, 555 P2d 962 (1976). Montana, therefore, had no jurisdiction at the time of the May, 1979, hearing.

■ We next look to ORS 109.770.[2] We find that an Oregon court is not an inconvenient forum in which to make a custody determination. Montana no longer has jurisdiction, and no other state is an appropriate forum.

■ Finally, we consider whether a court of this state should have exercised jurisdiction where father, who requested modification, improperly removed the child to this state. The UCCJA addresses this in 109.780(2):

"Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, with-

---

[2] The pertinent portions of ORS 109.770 are as follows:

"(1) A court which has jurisdiction under ORS 109.700 to 109.930 to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

"(2) A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child.

"(3) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

"(a) If another state is or recently was the child's home state;

"(b) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;

"(c) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

"(d) If the parties have agreed on another forum which is no less appropriate; and

"(e) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in subsections (1) and (2) of ORS 109.720."

[636]

out consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner has violated any other provision of a custody decree of another state the court may decline to exercise its jurisdiction if this is just and proper under the circumstances."

With father not present before the Montana court, that court did not have before it the complete facts upon which to base its decision. The interests of the child requires a full factual hearing at some time and this interest overrides the policy to refuse jurisdiction for improper removal of the child. *See Settle and Settle, supra.* The Oregon circuit court had both parties before it and access to relevant evidence from both sides. It was in the child's best interests that the court avail itself of its jurisdictional powers and make a determination of custody. The trial court properly exercised jurisdiction.

■  Mother's third argument is that, assuming that the trial court properly exercised jurisdiction, there has been no change of circumstances since the time of the original decree to justify a change of custody to the father. Prior to the Oregon court hearing, no adversary hearing had been held on the question of the child's custody. Therefore, no change in circumstances had to be shown before father could be awarded custody. *Williams v. Zacher,* 35 Or App 129, 581 P2d 91 (1978).

■  We come finally to a review of the trial court's decision on the merits awarding custody to the father. In a memorandum opinion the trial judge recorded his view of the case. The judge found no credible evidence to establish that deficiencies in father's character had adversely affected the child. Nor was the child shown to be neglected or abused. The child was happy and secure with father and his present wife. They have become her psychological parents, and the judge found

that it would not be beneficial to the child to disrupt her present environment.[3] We agree with the trial court that the child's best interests, the touchstone of a custody determination, dictate that she remain with her father.

■      We do not agree, as mother suggests, that this determination unduly emphasizes the concern for a stable environment to the exclusion of the other concerns that enter into a custody determination.[4] Had father not adequately supplied the child's other needs, the stability alone which she has experienced would not be sufficient to support a custody award.

Affirmed.

---

[3] The court's decree is now a year old. The child, now four and one-half years old, has been with her father and his new family since she was 19 months old.

[4] The relevant factors are listed in ORS 107.137:

"(1)   In determining custody of a minor child pursuant to ORS 107.105 or 107.135, the court shall give primary consideration to the best interests and welfare of the child. In determining the best interests and welfare of the child, the court may consider the following relevant factors:

"(a)   The emotional ties between the child and other family members;

"(b)   The interest of the parties in and attitude toward the child; and

"(c)   The desirability of continuing an existing relationship.

"(2)   The best interests and welfare of the child in a custody matter shall not be determined by isolating any one of the relevant factors referred to in subsection (1) of this section, or any other relevant factor, and relying on it to the exclusion of other factors.

"(3)   No preference in custody shall be given to the mother over the father for the sole reason that she is the mother.

"(4)   In determining custody of a minor child pursuant to ORS 107.105 or 107.135, the court shall consider the conduct, marital status, income, social environment or life style of either party only if it is shown that any of these factors are causing or may cause emotional or physical damage to the child."

**JOSEPH, P.J.,** concurring.

I concur only because the result is compelled by *Settle v. Settle,* 276 Or 759, 556 P2d 962 (1976), the "reasoning" of which could well be examined by the Supreme Court.