626 P.2d 1336 (1981)
Linda Diane HOLT, Petitioner,
v.
The DISTRICT COURT FOR the Twentieth JUDICIAL DISTRICT, ARDMORE, CARTER COUNTY, State of Oklahoma, and Stanley L. Anderson, Judge of the District Court for the Twentieth Judicial District, Ardmore, Carter County, State of Oklahoma, Respondents.
No. 56204.
Supreme Court of Oklahoma.
April 7, 1981.
Harry L. Bickford, Wallace, Bickford, Pasley & Farabough, Ardmore, for petitioner.
Darryl F. Roberts and Kathleen M. Duncan, Roberts & Duncan, Ardmore, for respondents.
*1338 LAVENDER, Justice:
This is an application to assume original jurisdiction and petition for writ of prohibition or mandamus in a child custody matter. The facts, as we have gathered them from the pleadings, affidavits, and exhibits, will be set out in some detail.
The petitioner here is Linda Diane Holt. She and her husband, Dean Edwin Holt, were married in 1971 in Ardmore, Oklahoma. They have four children, three sons and a daughter, ages 2 to 7. Apparently they lived in Oklahoma until April 1978. In April 1978 they moved from Oklahoma City to Aurora, Oregon, where they lived together until last summer.
On July 18, 1980, when he returned home from a week of duty with the Oregon Air National Guard, Mr. Holt found his wife moving out of their house, taking the children with her. She left Oregon two days later and went to Borger, Texas, where her grandmother and some other relatives live. Two of the children went with her to Texas. Another child went to stay with Mrs. Holt's mother in Ardmore, Oklahoma, and the other child went to stay with Mrs. Holt's sister in Moore, Oklahoma. Later Mrs. Holt, a registered nurse, found a job paying $900 per month in Memphis, Texas, some 90 miles from Borger. She moved there to begin work on August 4, and the two children who had been in Oklahoma joined her and the other two children on August 18.
On July 29, 1980, Mr. Holt filed for divorce in the Circuit Court of Marion County, Oregon. In his petition and by a separate motion he asked for custody of the children. Mrs. Holt was served with the papers in Texas in August. Since that time the Oregon court has had and has exercised jurisdiction in this matter.
On September 24, 1980, Mrs. Holt filed in the District Court of Hall County, Texas, an "original petition in suit affecting the parent-child relationship." In her petition she alleged that "[n]o court has continuing jurisdiction of this suit or of the children, the subject of this suit." She asked the Texas court to appoint her "temporary managing conservator of the children," to enjoin the father from interfering with her possession of the children or from "taking or attempting to take possession of the children" himself, and to order the father to make child support payments. The pleadings before us do not reveal whether service was obtained on Mr. Holt in the Texas action. Nevertheless, the filing of that action became the foundation for a motion filed by Mrs. Holt on October 3 in the Oregon action, based on the Uniform Child Custody Jurisdiction Act.[1] In her motion she requested the Oregon court to "[decline] to exercise jurisdiction to make a child custody determination for the reasons that this Court is an inconvenient forum and a Court of another state is a more appropriate forum to make a child custody determination under the circumstances of this case."
The Oregon court held a hearing on Mrs. Holt's motion on October 16. On October 28 the judge issued an order denying the motion. He ruled that "[t]he State of Oregon is the home state" of the children and that "[a]s between the State of Oregon and the State of Texas, the State of Oregon is the place where there is optimum access to evidence concerning the present or future care, protection, training and personal relationships of the parties' minor children."
The Oregon court held another hearing on October 22, this one for the purpose of ruling on various other motions that had been filed in the case. Mrs. Holt appeared personally. The judge entered an order on November 3, in which he granted Mrs. Holt temporary custody of the four children, but provided that if she "fails to return said children to the community of Aurora, Oregon and to resume residence in said community *1339 within thirty (30) days from the date hereof, temporary custody of the parties' four (4) minor children shall be vested in petitioner [Mr. Holt]." He also ordered that when Mrs. Holt returned Mr. Holt had to move out of the family residence, and he ruled that Mr. Holt "shall not be required to pay for or reimburse respondent [Mrs. Holt] for any costs or expenses incurred by respondent in returning herself or the parties' minor children to the State of Oregon."
Mrs. Holt never returned the children to Oregon. On October 23 she moved with the children to Ardmore, Oklahoma, to live with her parents. She had lost her job in Memphis, Texas, (the record does not indicate why), but in Ardmore she found a job paying $1,040 per month.
On December 3, 1980, Mrs. Holt filed a petition for separate maintenance and alimony in the District Court of Carter County, Oklahoma. She asked for temporary custody of the children, temporary support, and temporary attorney's fees. In her petition, as she did in her pleadings in the actions in Oregon and Texas, Mrs. Holt alleged that she is afraid of her husband, that he has physically abused her, and that he is "guilty of extreme cruelty" toward her and the children. This Court's attention has not been called to any action in the nature of cruelty.
Mr. Holt was served with the papers in the Carter County action by mail on December 9. On December 11 he filed a motion to stay and a "motion to enforce orders of sister state," moving the court to stay all proceedings in Mrs. Holt's separate maintenance action and to enforce the orders of the Oregon court. To enforce the orders of the Oregon court, Mr. Holt asked the Carter County court for an order directing Mrs. Holt to appear personally and deliver actual physical custody of the children to him.
Hearing on Mrs. Holt's motions to stay and to enforce the Oregon court orders was set for December 18, 1980. On December 17 Mrs. Holt filed a motion for a continuance. Her motion alleged that she and her daughter were seeing a "family clinician" at a counseling center called the Guidance Clinic in Ardmore, and informed the court that it would not be until February 1981 that the clinic could "properly evaluate the problems presently existing with [the daughter] and make a recommendation to the Court." The record does not indicate the nature of these problems.
The family clinician testified at the hearing on December 18. Mrs. Holt's motion for a continuance was denied. Mr. Holt's motion to stay was granted. The judge found that Oregon is the home state of the children and that the Oregon court "is exercising jurisdiction substantially in conformity with the Uniform Child Custody Jurisdiction Act." He determined that under the Act, "the Circuit Court of Marion County, State of Oregon, having assumed jurisdiction prior to the filing of the Petition herein, this Court is bound to decline to exercise its jurisdiction." Having determined that, he concluded that "evidence concerning the best interest of the children with regard to assuming jurisdiction, establishing a significant connection with this State, and establishing evidence concerning the children's present or future care, protection, training and personal relationships is not necessary," and he did not allow Mrs. Holt to put on testimony regarding those things. The judge made no monetary awards, except to order Mr. Holt to continue making payments on the joint indebtedness of the parties. Finally, he ordered Mrs. Holt to deliver custody of the children to Mr. Holt, though he delayed the effectiveness of that part of the order until noon on December 24, Christmas Eve, to enable Mrs. Holt to seek a stay in this court.
Mrs. Holt did seek a stay in this court. She filed this original action on December 23, asking for a stay, a writ of prohibition, and a writ of mandamus. Prohibition is sought to keep the judge in Carter County from enforcing his December 18 order to deliver custody of the children to Mr. Holt. Mandamus is sought to require the judge to *1340 hear evidence concerning the best interests of the children, to hear evidence concerning a significant connection between the mother and children and the State of Oklahoma, and to communicate with the judge of the Circuit Court of Marion County, Oregon. We heard argument on December 24, issued a stay until further order of the court, and called for briefs. We now assume original jurisdiction.

I.
This case involves the Uniform Child Custody Jurisdiction Act.[2] That law is a long-awaited and much-needed attempted solution to a number of troubling problems in the area of domestic relations. The main problems it attempts to address are child snatching and multi-state jurisdictional squabbles. It goes at these and other problems in several ways, but primarily by limiting the jurisdiction of the courts to act in custody matters.[3] The Act has several purposes, which are set out specifically[4] so that each section of the Act will be read with those purposes in mind.[5] An overriding aim of the Act is to "shift from providing for the child's best interests through ease of modification to an emphasis on continuity of the child's environment."[6] This purpose is expressed in section 1602(4) of the Act, which says that the purpose is to:
Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child.
The need of children for a stable home environment and secure family relationships is well recognized,[7] and we have recognized it in our own pre-U.C.C.J.A. cases.[8]
This case is a good example of the kind of disrupting moving around the Act is designed to help prevent. All four of the children here have lived in at least three homes since last summer, and three of them have lived in four different homes.[9] The courts of the states involved  Oregon, Texas, and Oklahoma  must now try to act together in the interest of the children to provide them a stable home environment.

II.
In support of her petition for a writ of mandamus, Mrs. Holt asserts that Oklahoma has jurisdiction under section 1605(A)(2) of the U.C.C.J.A., which provides:
A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
.....
2. It is in the best interest of the child that a court of this state assume jurisdiction because:

*1341 a. the child and his parents, or the child and at least one contestant, have a significant connection with this state, and
b. there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships.
She asserts that the Oklahoma court should have taken evidence concerning the best interests of the children, the connection with Oklahoma, and the availability of evidence here regarding the children's care, protection, training, and personal relationships  all with a view toward establishing the existence of jurisdiction.
Mrs. Holt also asserts that the Oklahoma court should have employed the two-step "test" for determining jurisdiction set forth in an Oregon case, Smith v. Smith.[10] In that opinion, which relied on an earlier Oregon Supreme Court case,[11] the Oregon Court of Appeals held:
When a petition is filed under the Uniform Child Custody Jurisdiction Act to modify the custody decree of a court of another state two separate and distinct questions are presented which must be resolved in order: (1) Does the Oregon court have jurisdiction under the Act, and (2) if so, should the Oregon court exercise its jurisdiction.[12]
Actually, this is not a "test" as such, but rather is an approach to determining whether to exercise jurisdiction. It is a good approach, and we adopt it for the Oklahoma courts in U.C.C.J.A. cases.
Our version of the U.C.C.J.A. contains four prerequisites for jurisdiction, set out in title 10, section 1605(A), subsections (1) through (4). They are alternative, and if the requirements of any one of the four are met an Oklahoma court has jurisdiction. Even if jurisdiction exists, however, it may not be proper for the court to exercise its jurisdiction. There are three grounds set out in the Act, one mandatory and two discretionary, on which a court must or should decline to exercise jurisdiction.[13] They are: (1) when "at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this act,"[14] (2) when Oklahoma is an "inconvenient forum,"[15] and (3) when the petitioner has snatched the child, improperly retained custody after visitation, or "engaged in similar reprehensible conduct."[16] In addition, the jurisdiction of an Oklahoma court to modify a custody decree rendered by a court of another state is substantially curtailed.[17] It can be seen, then, that the approach referred to by Mrs. Holt is actually a multistep process.[18]
Cases may come up in which we, by writ of mandamus, will direct a district court to hear evidence in order to determine whether jurisdiction exists in a child custody matter. The multistep process described *1342 above will not always be necessary, however. In some cases it will be as expeditious to assume the existence of jurisdiction and to consider in the first instance whether that jurisdiction should or can be exercised. This will be especially true when title 10, section 1608(A) applies. That section provides:
A court of this state shall not exercise its jurisdiction under this act if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this act, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for others reasons. [Emphasis added.]
This provision can be considered a limitation on jurisdiction[19] or a limitation on the exercise of jurisdiction.[20] We need not and do not pass on that question today, for in either event the cases indicate that the proper approach is to go directly to the question of another pending action.[21] If a proceeding concerning custody was pending in another state at the time the Oklahoma action was filed, and the court in that state is exercising jurisdiction substantially in conformity with the U.C.C.J.A. and has not stayed its proceeding, then the statute commands the Oklahoma court not to exercise its jurisdiction.
In this case the Oklahoma court found  and, from the record before us, found correctly  that the Oregon court was exercising jurisdiction substantially in conformity with the Act. He therefore declined to assume jurisdiction, holding that it was unnecessary to hear the evidence that would establish the existence of jurisdiction. Since even if jurisdiction existed the court would be prohibited by section 1608(A) from exercising it, it was proper for him to decline to hear the evidence. We will not issue a writ of mandamus directing him to do so.

III.
In further support of her petition for a writ of mandamus, Mrs. Holt argues that jurisdiction should be assumed under title 10, section 1605(D) of the Act. That section provides:
The controlling criteria for awarding custody by a court of this state shall always be what is in the best interest of the child, other statutory provisions merely being factors which may be considered.
This provision is not part of the Uniform Act, but was added by the Oklahoma legislature when our version of the U.C.C.J.A. was enacted.
It is necessary to consider the effect of this section. By its language it is not an independent ground for assuming jurisdiction, though Mrs. Holt argues that it should be so construed. It merely states that the "criteria for awarding custody" shall be "what is in the best interest of the child," and does not refer to jurisdiction. Nor do we think that it should be considered an independent ground for assuming jurisdiction.
The first declared purpose of the U.C.C.J.A. is to "[a]void jurisdictional competition and conflict with courts of other states in matters of child custody."[22] As we have said, the Act goes about accomplishing *1343 that and its other purposes primarily by limiting the jurisdiction of our courts.[23] The Commissioners who drafted the Act stated that "[w]hile jurisdiction may exist in two states ..., it will not be exercised in both states."[24] That language, and the language of the Act declaring one of its purposes to be to avoid jurisdictional competition, has been construed as "tantamount to an instruction that jurisdiction is not to be simultaneously exercised in [two] states."[25] And with regard to one of the specific "best interest" jurisdictional grounds, section 1605(A)(2),[26] which the legislature enacted without change from the Uniform Act and which Mrs. Holt relied on, it has been held that "the phrase `best interest' ... should not be applied independently and is insufficient as a jurisdictional basis absent proof of both the `significant connection' and `substantial evidence' requirements."[27] So it is with the phrase "best interest" in section 1605(D). For us to hold, as Mrs. Holt urges, that that section provides an independent ground for the assumption of jurisdiction, capable of overriding the other specific grounds for jurisdiction and limitations on a court's exercise thereof, would run contrary to the Act. Nothing in the legislature's enactment of the section indicates such an intention. Rather, it appears that the legislature was mandating that once jurisdiction is assumed by a court, the court in awarding custody later must do so according to the best interest of the child.[28] The question of whether jurisdiction exists and the question of who should have custody are two entirely different matters. Section 1605(D) applies only to the latter question; it does not provide an independent ground for jurisdiction, and we therefore will not direct the district court to hear evidence to establish jurisdiction under it.

IV.
In addition to a writ of mandamus, Mrs. Holt asks for a writ of prohibition to prohibit the district court from enforcing its order requiring her to deliver custody of the children to Mr. Holt. She argues for this writ on several grounds.
First, she argues that the Oregon order, on which the Oklahoma court predicated its order, is punitive and not entitled to enforcement. The Oregon order provided:
Subject to the conditions stated herein, wife is granted the temporary custody of the parties' minor children, [naming them], during the pendency of this suit. Provided, however, that if respondent [Mrs. Holt] fails to return said children to the community of Aurora, Oregon and to resume residence in said community within thirty (30) days from the date hereof, temporary custody of the parties' four (4) minor children shall be vested in petitioner [Mr. Holt].
For this argument Mrs. Holt relies on an Oregon case, Brooks v. Brooks.[29] In that case the mother, who had custody of the parties' two children, had not allowed the father to visit the children and had moved secretly from Montana to Oregon. The Montana court that had rendered the divorce decree modified the decree, granting custody to the father, who then went to Oregon for a writ of habeas corpus. The writ was denied, and on appeal the denial was affirmed by the Oregon Court of Appeals, *1344 which held that the Montana modification was punitive, designed to discipline the mother.[30] The appeals court further held that the circuit court was justified in refusing to enforce the punitive modification and in further modifying the Montana decree to give custody back to the mother.[31]
It is true that under the U.C.C.J.A. punitive orders need not be enforced by sister states.[32] Generally, however, temporary custody orders, because of their temporary nature, should not be deemed punitive.[33] And in this case specifically, we find no intent on the part of the Oregon court to punish Mrs. Holt. At the time of the hearing in question, Mrs. Holt had already left Oregon with the children, moved to one place in Texas, and moved again. Between the time of the hearing and the date the Oregon court issued the order, Mrs. Holt had moved with the children once more, from Texas to Oklahoma. Yet the Oregon court gave temporary custody to Mrs. Holt. The provisions requiring Mrs. Holt to return the children to Oregon appears to be in the interest of the children, to provide them with a stable environment in the home they lived in for the previous two years, not to punish Mrs. Holt. Until facts and circumstances establish otherwise, we must  and do  presume that the Oregon court is acting in the best interest of the children.[34] We therefore hold that the Oregon court order is not punitive.
Second, Mrs. Holt argues that the Oregon order, being punitive, violates her constitutional right to travel. If the order were punitive, a substantial constitutional question would be presented.[35] Having held that it is not punitive, however, we do not find any constitutional violation.
Finally, Mrs. Holt argues that the Oregon order cannot be enforced in Oklahoma because it is not self-executing. "Self-executing judgments" are defined in Black's Law Dictionary as:
Those requiring no affirmative action of the court or action under process issued by the court to execute them.[36]
Mrs. Holt argues that the order requires further affirmative action by the Oregon court  i.e., a specific order from that court directing her to turn over custody  before the order can be enforced.
It is probably true that Mrs. Holt cannot be held in contempt of the Oregon court until another order specifically directs her to turn over custody. Nevertheless, the Oregon court order can  and we believe under the U.C.C.J.A. must  be enforced in Oklahoma. The enforcement provision of the Act, section 1615, reads:
The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this act or which was made under factual circumstances meeting the jurisdictional standards of the act, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this act. [Emphasis added.]
We have said that each provision of the Act must be read and applied in light of the *1345 Act's purposes.[37] Several of those purposes have been discussed. Three others of note here are set out in title 10, section 1602, subsections (6), (7), and (8). They are to:
6. Avoid relitigation of custody decisions of other states in this state insofar as feasible;
7. Facilitate the enforcement of custody decrees of other states; [and]
8. Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child.
The Act was designed so that its provisions, both the mandatory and the discretionary ones, would coincide with the best interests of the child.[38] Section 1615 mandates enforcement. It is incumbent on our courts to cooperate with courts in other states which are exercising jurisdiction under the U.C.C.J.A. The fact that the order or decree of another state is not self-executing cannot impair the ability of our courts to extend that cooperation.[39] To effect that cooperation, we hold that our courts have the authority under the Act to issue orders which, in effect, execute orders or decrees of other courts that are not self-executing. Given the factual situation before him, and having the power to do so, the Oklahoma court did not err in ordering Mrs. Holt to surrender custody of the children. We decline to issue a writ of prohibition.

V.
We have declined to issue a writ of prohibition, and declined to issue a writ of mandamus for the purpose requested by Mrs. Holt. There is one more matter, however, not argued by the parties but which we raise on our own.
As we have said, in all of her pleadings, Mrs. Holt has alleged that Mr. Holt has abused her and the children. At this point that is just an allegation. If there is substance to it, however, and if the children are still in Oklahoma, it may be proper for the Oklahoma court to take some action. Title 10, section 1605(A)(3) of the Act provides:
A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
.....
3. The child is physically present in this state and:
.....
b. it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent.
This is referred to as the "emergency jurisdiction" provision.[40] It is "reserved for extraordinary circumstances,"[41] and "it must not be misused to defeat the purposes of the act, but [it] nevertheless retains and reaffirms [the state's] parens patriae responsibility for children in need of immediate *1346 protection."[42] Professor Brigitte Bodenheimer, the Reporter for the Uniform Act, has said this about the provision:
This exceptional jurisdiction exists in very few cases. Naturally, there will be attempts to circumvent the Act by "shouting fire" in every conceivable situation. Emergency jurisdiction must be denied, however, when it is invoked as a pretext in order to reopen a custody controversy. Unless judges and attorneys are constantly alert to the dangers inherent in misuses of emergency jurisdiction to circumvent the Act, the exception could tear so large a hole in the Act that custody decrees made in one state would again be relitigated in other states; and the interstate chaos that the Act was intended to remedy would be revived and perhaps intensified.[43]
With the caveat, then, that the court should examine very carefully Mrs. Holt's allegations before assuming jurisdiction for this limited purpose, we direct the District Court of Carter County to take evidence on the necessity of making a protective order. The kind of evidence necessary to establish emergency jurisdiction is set out in a Colorado case, Roberts v. District Court.[44] If the evidence shows a need for a protective order, the court still may not overrule or modify the Oregon court order.[45] Rather, it should stay its enforcement of the Oregon court order, make such temporary custody order as is needed, and require Mrs. Holt to submit the matter to the Oregon court within a definite time period.[46] Then if there is a problem it can be finally resolved by the Oregon court, which is equally well suited to remedy any potential abuse.[47]
The writ of prohibition is denied. Let a writ of mandamus issue for the limited purpose of requiring the district court to hear any evidence Mrs. Holt cares to present on the question of assuming emergency jurisdiction. Our stay of enforcement of the district court's order requiring Mrs. Holt to deliver custody of the children is hereby continued until the district court has acted on the question of assuming emergency jurisdiction. At that time, or ten days after the date of this opinion if Mrs. Holt has not filed a petition for the court to assume emergency jurisdiction, the District Court of Carter County is authorized to dissolve our stay. Whether or not Mrs. Holt files such a petition, the court is directed to inform the Oregon court of all proceedings held in Oklahoma, including this original action.[48]
ORIGINAL JURISDICTION ASSUMED; WRIT OF PROHIBITION DENIED; WRIT OF MANDAMUS ISSUED; STAY CONTINUED.
IRWIN, C.J., BARNES, V.C.J., and WILLIAMS, DOOLIN, HARGRAVE and OPALA, JJ., concur.
SIMMS, J., concurs in result.
HODGES, J., dissents.
NOTES
[1] Or. Rev. Stat. §§ 109.700-.930. In Oklahoma the Act appears at 10 O.S.Supp. 1980 §§ 1601-1627.
[2] Hereinafter referred to as the "Act" or the "U.C.C.J.A."
[3] Commissioners' Prefatory Note, Uniform Child Custody Jurisdiction Act, 9 U.L.A. 111, at 114 (Master Ed. 1979). See generally Annot., 96 A.L.R.3d 968 (1980).
[4] 10 O.S.Supp. 1980 § 1602.
[5] Commissioners' Note, Uniform Child Custody Jurisdiction Act § 1, 9 U.L.A. 117 (Master Ed. 1979).
[6] Comment, Temporary Custody Under the Uniform Child Custody Jurisdiction Act: Jurisdiction Without Modification, 49 U.Colo.L.Rev. 603, 605 (1977). See also Bodenheimer, Progress Under the Uniform Child Custody Jurisdiction Act and Remaining Problems: Punitive Decrees, Joint Custody, and Excessive Modifications, 65 Calif.L.Rev. 978, 983 (1977).
[7] E.g., Commissioners' Prefatory Note, Uniform Child Custody Jurisdiction Act, 9 U.L.A. 111, at 112-13 (Master Ed. 1979); J. Goldstein, A. Freud & A. Solnit, Beyond the Best Interests of the Child 31-52 (1973).
[8] Pirrong v. Pirrong, 552 P.2d 383, 387 (Okl. 1976); see Hurt v. Hurt, 315 P.2d 957, 959 (Okl. 1957).
[9] In fact, we are now informed  though by letter, not by verified pleading or affidavit  that Mrs. Holt has again moved with the children, this time to Lubbock, Texas.
[10] 40 Or. App. 257, 594 P.2d 1292 (1979).
[11] In re Marriage of Settle (Settle v. Settle), 276 Or. 759, 556 P.2d 962, 965 (1975) (in banc).
[12] 594 P.2d at 1294 (emphasis in original).
[13] See generally Williams v. Zacher, 35 Or. App. 129, 581 P.2d 91, 93-95 (1978); Hood, Oklahoma's Uniform Child Custody Jurisdiction Act, 51 Okl.B.J. 2537, 2538 (1980).
[14] 10 O.S.Supp. 1980 § 1608(A) (mandatory).
[15] Id. § 1609 (discretionary).
[16] Discretionary when an "initial decree" is petitioned for, id. § 1610(A), mandatory in certain cases when modification is sought "[u]nless required in the interest of the child." Id. § 1610(B). See generally Williams v. Zacher, 581 P.2d at 93-94 & n. 2.
[17] 10 O.S.Supp. 1980 § 1616.
[18] Carson v. Carson, 29 Or. App. 861, 565 P.2d 763, 764-65 (1977), aff'd, 282 Or. 469, 579 P.2d 846 (1978) (in banc); Vanneck v. Vanneck, 68 A.D.2d 591, 417 N.Y.S.2d 258, 262 (1979), aff'd, 49 N.Y.2d 602, 404 N.E.2d 1278, 427 N.Y.S.2d 735 (1980); Priscilla S. v. Albert B., 102 Misc.2d 650, 424 N.Y.S.2d 613, 616 (Fam.Ct. 1980).
[19] As the Colorado Supreme Court seems to have held. Lopez v. District Court, 606 P.2d 853, 855 (Colo. 1980) (en banc). But see id. at 856 (last paragraph).
[20] As the Colorado and Florida courts of appeals have held. In re Custody of Rector (Rector and Rector), 39 Colo. App. 111, 565 P.2d 950, 951-52 (1977); Hanson v. Hanson, 379 So.2d 967, 968 (Fla.App. 1979) (per curiam); Toelle v. Toelle, 378 So.2d 877, 877-78 (Fla. App. 1979).
[21] Cases in notes 19 & 20, supra see especially In re Custody of Rector (Rector and Rector), 565 P.2d at 951-52.
[22] 10 O.S.Supp. 1980 § 1602(1).
[23] Note 3, supra.
[24] Commissioners' Note, Uniform Child Custody Jurisdiction Act § 3, 9 U.L.A. 123, 124 (Master Ed. 1979) (emphasis in original).
[25] Mort v. Mort, 365 So.2d 194, 195-96 (Fla. App. 1978).
[26] The other is section 1605(A)(4), which is not applicable here.
[27] William L. v. Michele P., 99 Misc.2d 346, 416 N.Y.S.2d 477, 480 (Fam.Ct. 1979) (emphasis added).
[28] This is the law in Oklahoma even without the U.C.C.J.A. 30 O.S. 1971 § 11(1); Boyle v. Boyle, 615 P.2d 301, 303 (Okl. 1980).
[29] 20 Or. App. 43, 530 P.2d 547 (1979).
[30] 530 P.2d at 551.
[31] Id. at 552.
[32] Id. at 551-52; see Commissioners' Note, Uniform Child Custody Jurisdiction Act § 13, 9 U.L.A. 151, 152 (Master Ed. 1979). See generally Bodenheimer, supra note 6, at 1003-09.
[33] Miller v. Superior Court, 22 Cal.3d 923, 587 P.2d 723, 727, 151 Cal. Rptr. 6 (1978). This case applied the U.C.C.J.A. to an international situation. The principle is equally applicable, perhaps more so, to the interstate situation before us.
[34] In re Lemond (McCormack v. Lemond), 395 N.E.2d 1287, 1291-92 (Ind. App. 1979).
[35] See generally Bodenheimer, supra note 6, at 1008-09.
[36] Black's Law Dictionary 1220 (5th ed. 1979); see Fluke v. Canton, 31 Okl. 718, 123 P. 1049, 1059 (1912).
[37] Commissioners' Note, Uniform Child Custody Jurisdiction Act § 1, 9 U.L.A. 117 (Master Ed. 1979).
[38] See Roberts v. District Court, 596 P.2d 65, 68 (Colo. 1979).
[39] Though whether it was "self-executing" was not an issue in the case, we note that the Hawaii decree recognized by the Indiana Court of Appeals in In re Lemond (McCormack v. Lemond), 395 N.E.2d 1287 (Ind. App. 1979), was not self-executing.
[40] See generally Comment, 48 U.Colo.L.Rev., supra note 6.
[41] Commissioners' Note, Uniform Child Custody Jurisdiction Act § 3, 9 U.L.A. 123, 124 (Master Ed. 1979).
[42] Priscilla S. v. Albert B., 102 Misc.2d 650, 424 N.Y.S.2d 613, 617 (Fam.Ct. 1980); see Commissioners' Note, supra note 41.
[43] Bodenheimer, supra note 6, at 992-93 (footnotes omitted).
[44] 596 P.2d 65, 68 & n. 1 (Colo. 1979) (en banc). See also Breneman v. Breneman, 92 Mich. App. 336, 284 N.W.2d 804, 807 (1979).
[45] In re Custody of Thomas (Thomas v. Thomas), 36 Colo. App. 96, 537 P.2d 1095, 1097 (1975); 10 O.S.Supp. 1980 § 1616(A).
[46] Fry v. Ball, 190 Colo. 128, 544 P.2d 402, 407-08 (1975) (en banc); In re Marriage of Kern (Kern v. Kern), 87 Cal. App.3d 402, 150 Cal. Rptr. 860, 863 (1978).
[47] Roberts v. District Court, 596 P.2d 65, 68 (Colo. 1979) (en banc).
[48] 10 O.S.Supp. 1980 §§ 1608(C), 1609(D). See also id. §§ 1618, 1626.