Bob DAVIS, II *v.*
Debra Diane Wheaton DAVIS

84-299                                        687 S.W.2d 843

Supreme Court of Arkansas
Opinion delivered April 15, 1985

*Wright & Chaney, P.A.*, by: *Donald P. Chaney, Jr.*, for appellant.

*B. W. Sanders, P.A.*, for appellee.

STEELE HAYS, Justice. Bob Davis appeals from an order of the Chancellor of Hot Spring County finding that Arkansas has no jurisdiction to decide a custody dispute

between Davis and his former wife, Debra, involving their son, Bradley. We agree with the appellant that under the Uniform Child Custody Jurisdiction Act[1] the Chancellor should have heard the case on its merits. Accordingly, we reverse and remand.

Bob and Debra Davis are longtime residents of Arkansas, with ties to Clark and Hot Spring Counties. They married in Clark County and Bradley was born there on July 5, 1977. They seem to have lived at times in Clark County and in the neighboring county of Hot Spring, where Debra Davis owned a mobile home on lands belonging to her parents.

In September of 1980 Bob Davis went to Texas to work as a welder. Debra joined him later, leaving Bradley in Hot Spring County with her parents. Bradley came still later and lived there just over a year. In March of 1982 a decree of divorce was entered in the District Court of Harris County, Texas, awarding a divorce and custody of Bradley to Debra Davis.

Some months after the divorce Debra came back to Arkansas with Bradley and resumed habitation in Hot Spring County. Bob Davis also returned to Arkansas and neither party has had any further residence in Texas. After Bob's return he lived in Arkadelphia and, by agreement between the parties, Bradley spent weekends and summers with his father on a regular basis.

Debra began selling real estate and in April, 1983, she went to Florida, where opportunities seemed brighter, again leaving Bradley in Arkansas with her parents. In the fall Debra was back in Arkansas hoping to find work. Bob told her he would oppose any effort to remove Bradley to Florida, if that was her aim. Evidently this conversation, which occurred on October 8, 1983, alarmed Debra and she suddenly removed Bradley from school and left for Florida "within the hour."[2]

---

[1] Ark. Stat. Ann. §§ 34-2701 et seq. (1983 Supp.).
[2] Affidavit of Debra Davis's father, R., p. 94.

Bob Davis immediately petitioned the Chancery Court of Clark County for a change of custody and the Chancellor issued a temporary order for Bradley's return to Arkansas, which a Florida court honored. Bradley was returned to Arkansas where he remained until December 6, 1983, when the Clark Chancery Court held a hearing in the matter. There is some indication from the record that Debra Davis, while objecting generally to jurisdiction in Arkansas, argued that as between Clark and Hot Spring County, venue lay in Hot Spring County. At any rate, the Chancellor determined that Hot Spring County had more significant connections with the family and ordered the proceedings transferred.

When the case came before the Chancellor of Hot Spring County in January, 1984, he held there was no jurisdiction in Hot Spring County and attempted to transfer the case back to Clark County. With the entry of that order, Bob Davis moved the Clark Chancellor to reconsider his original order of transfer, which was refused. Davis then filed a new petition in Hot Spring County on March 12, 1984 and it, too, was dismissed by the Chancellor for lack of jurisdiction in Arkansas. On appeal, that order is reversed.

The basic purposes of the Uniform Child Custody Jurisdiction Act are to provide a forum with the closest connection to the child and his family, to deter the abduction and shifting of children from state to state, and to promote interstate cooperation in adjudicating custody matters[3]. Other purposes stated in the act are to "discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child," and to discourage the "unilateral removal of children undertaken to obtain custody awards." Ark. Stat. Ann. § 34-2701 (Supp. 1983). The frustration of most of the goals of the act is demonstrated to a significant degree by this record. The parties have litigated in Arkansas and Florida over the past eighteen months without ever getting beyond the threshold issue of jurisdiction to the merits. Bradley has been shuttled between

---

[3]Shively, Survey of Family Law, 3 UALR L.J. 223 (1980).

Arkansas and Florida, away from family, school and friends, substituting instability for a relatively stable environment[4]. Bob Davis has been shunted back and forth between the courts of Clark and Hot Spring Counties, Arkansas, as well as Florida, in a futile effort to obtain a custody ruling on the merits of the case.

The Uniform Child Custody Jurisdiction Act recognizes that circumstances can occur after an initial custody award which affect jurisdiction for purposes of modifying custody. A second state, in order to modify the custody award of another state, must first have jurisdiction under one or more of those provisions listed in § 3 (Ark. Stat. Ann. § 34-2703), which include being the "home state," defined in § 2 as: "The state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months. . ." Plainly, Arkansas was the home state in this case. It is undisputed that Bradley had been back in Arkansas for considerably longer than six months when his father filed the original petition in October, 1983. And while appellee suggests that Florida had become the "home state" by March, 1984, when the "new" petition was filed in Hot Spring County, we cannot sustain that contention.

Debra Davis argues that Texas has retained jurisdiction over Bradley's custody. She cites *Blosser* v. *Blosser,* 2 Ark. App. 37, 616 S.W.2d 29 (1981), as being "almost exactly" the situation before us, and *Rodriguez* v. *Saucedo,* 3 Ark. App. 43, 621 S.W.2d 874 (1981) and *Caskey* v. *Pickett,* 274 Ark. 383, 625 S.W.2d 473 (1981). None of these cases govern. In *Caskey* v. *Pickett, supra,* we reversed the trial court's preemption of jurisdiction over the jurisdiction of Texas, where the parties had lived at the time of the divorce and custody award, and where the custodial parent and child still lived. The noncustodial parent had moved to Arkansas and refused to return the child to the Texas parent at the end of a visitation period, claiming an emergency existed pursuant to § 3 [Ark.

---

[4]The National Conference of Commissioners on Uniform State Laws, which approved the Act, has aptly noted that the harmful consequences of such experiences on children cannot be over emphasized. See Uniform Laws Annotated, Master Edition, Vol. 9, p. 112.

Stat. Ann. § 34-2703(a)(3)]. The Chancellor upheld the claim but the finding was not sustained on appeal to this court. We determined that Texas had continuing jurisdiction because of its status as the "home state" of the custodial parent and the child.

In *Blosser*, the Court of Appeals affirmed an Arkansas Chancellor's refusal to assume jurisdiction under the act on the petition of a father who had wrongfully removed the child from Oklahoma for almost a year to prevent the enforcement of an Oklahoma custody order. A similar wrongful removal of the child occurred in *Rodriguez, supra.* Thus, in *Blosser* and *Rodriguez*, one parent, in contravention of § 34-2708(b)[5] attempted to defeat jurisdiction by the wrongful removal of the child and urged Arkansas to assert jurisdiction adverse to the jurisdictional rights of the original states. In both cases the child was wrongfully removed in violation of § 34-2708(b), but in *Rodriguez*, Texas remained the home state under § 34-2703(a)(1) and (2), and in *Blosser*, Oklahoma would have also been the home state but for the wrongful removal by the non-custodial parent.

The factual differences between *Blosser* and *Rodriguez*, and the case before us need little elaboration. There were no circumstances in this case requiring deference to the jurisdiction of any other state. Arkansas was clearly the home state and there was no improper conduct by one parent in removing the child to this state.

*Blosser* and *Rodriguez* were correctly decided, jurisdiction in the foreign states resting firmly on § 34-2708(b) and home state considerations, but reference in both decisions to "continuing jurisdiction" in the state which grants a divorce and awards custody, could lead to confusion. *Blosser* and *Rodriguez* referred to § 34-2706(a), which provides that one state will not exercise jurisdiction under

---

[5]§ 34-2708(b).   Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. . . .

the act if at the time of filing the petition a custody proceeding is pending in another state exercising jurisdiction substantially in conformity with this act unless the first state recognizes that this state is the more appropriate forum. In the setting of those cases, we would be reluctant to label such "continuing jurisdiction" as constituting a "pending proceeding" as contemplated in § 34-2706. If that were so, the court of a state granting custody in the first instance would always retain "pending" jurisdiction for later modification of custody, irrespective of subsequent developments, and even if the parties and children were, as here, living in another state. Hence, the "home sate" provision of § 2(5) of the act [Ark. Stat. Ann. § 34-2702(5)] would have little meaning. See *In Re Marriage of Steiner,* 89 Cal. App. 3d 363, 152 Cal. Rptr. 612 (1979); *Wheeler* v. *District Court of Denver,* 186 Colo. 218, 526 P.2d 658 (1974); *Williams* v. *Zacker,* 35 Or. App. 129, 581 P.2d 91 (1978); 96 A.L.R.3d 959; "The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws," 22 Vand. L. Rev. 1207, at page 1236. Therefore, while Texas in this case had jurisdiction initially over these parties when granting the divorce there is no "pending proceeding" there to qualify that state for jurisdiction over this cause under § 34-2706(b).

For the foregoing reasons we reverse the order of the Hot Spring Chancery Court and remand for further proceedings.

NEWBERN, J., concurs.

DAVID NEWBERN, Justice, concurring. This case is before us because there is no venue statute for child custody cases when the defendant neither resides nor is summoned in Arkansas. Until our General Assembly enacts such a statute, these cases will suffer from an uncertainty resulting in delays which can only be detrimental to the stability and other best interests of the child in question. A venue statute for child custody cases is badly needed.