OPINION OF THE COURT
Leonard J. Litz, J.
In this custody proceeding initiated by petition dated August 23, 1979, the petitioner seeks custody of her second cousin by adoption from the respondent, the child’s adoptive father. The pleadings were served on the respondent, a resident of Vermont, by mail, who thereafter appeared in this proceeding with counsel. In a proceeding initiated in Vermont subsequent to the commencement of this proceeding, respondent obtained an order of custody of the child from the Superior Court in Bennington, Vermont on September 5, 1979. *652 This order was granted without a plenary hearing and without notice to this petitioner, the physical custodian of the child. Counsel for respondent thereafter moved to dismiss this petition on the grounds that the Vermont custody decree is entitled to recognition and enforcement and that this court lacks jurisdiction to make a custody determination under the provisions of the Uniform Child Custody Jurisdiction Act (Domestic Relations Law, art 5-A, § 75-a et seq., hereinafter referred to as the UCCJA).
After a preliminary hearing, an oral decision was issued denying the motion. At that time three determinations were made: (1) that this court has jurisdiction under the UCCJA to decide custody of this child; (2) that this court is not bound to recognize and enforce the Vermont custody decree; but (3) that Vermont is the more convenient forum in which to litigate this custody dispute. These proceedings were therefore stayed pending the petitioner’s prompt initiation of a proceeding in the appropriate Vermont court and temporary physical custody of the child was left pendente lite, with the petitioner. (See Kern v Kern, 87 Cal App 3d 402.) Subsequent unanticipated developments now require a modification of my previous decision.
An analysis of the facts surrounding this proceeding is crucial to a proper determination of the jurisdictional issues which have been raised. The child, now 11, was adopted by respondent and the adoptive mother in Vermont in 1969. In 1970,- the adoptive mother was awarded custody of the child pursuant to a Bennington, Vermont, County Court divorce decree, and she subsequently remarried and moved with the child to Troy, New York, where they resided until her death in 1974. At that time the child, apparently with the consent of the respondent, went to live with her adoptive maternal grandmother in Bennington, Vermont, where she resided until July of 1979, with weekend visitation at the home of the respondent during this period of time. During the summer of 1979, the custodial grandmother suffered illnesses which impaired her ability to care for the child and in July she allowed the child to return to Schenectady, New York, with the petitioner for a two-week visit. The child has continued to reside with the petitioner in Schenectady, New York, though there is sharp dispute regarding whether the petitioner’s continued physical custody of the child is at the grandmother’s request, or against her demands for the child’s return.
*653 In making a ruling on the issues raised by the respondent, " 'the court must go through a multistep process in determining whether to exercise jurisdiction. First it must ascertain whether it has jurisdiction * * * If it finds that there is jurisdiction, then the court must determine whether there is a custody proceeding pending or a decree in another state * * * Finally, assuming the court has jurisdiction and there is not a proceeding pending or a decree, the court then must determine * * * whether to exercise its jurisdiction because of convenient forum.’ ” (Vanneck v Vanneck, 68 AD2d 591, 597; Carson v Carson, 29 Ore App 861, 865.)
JURISDICTION
Under traditional principles, the physical presence of the child within the State was sufficient to confer jurisdiction to make a custody determination consonant with the child’s welfare. (See Matter of Nehra v Uhlar, 43 NY2d 242, 248.) Under the UCCJA, however, the child’s presence in the State alone is not enough (Domestic Relations Law, § 75-d, subd 2). Subdivision 1 of section 75-d of the Domestic Relations Law sets forth four alternative bases on which a court of this State has subject matter jurisdiction in a custody dispute:
"1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree only when:
"(a) this state (i) is the home state of the child at the time of commencement of the custody proceeding, or (ii) had been the child’s home state within six months before commencement of such proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
"(b) it is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is within the jurisdiction of the court substantial evidence concerning the child’s present or future care, protection, training, and personal relationships; or
"(c) the child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child; or
*654 "(d) (i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (a), (b), or (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.”
Based on the facts of this case, the jurisdictional prerequisites of paragraphs (a), (b) and (d) of subdivision 1 are clearly not satisfied: New York is not now, nor has it been within the last six months, the child’s "home state” the "child and at least one contestant” do not have a "significant connection” with this State, based solely on the child’s residence here for a two-month period within the last five years, nor, for the same reason, is there more "substantial evidence” available in this jurisdiction than in Vermont (see William L. v Michelle P., 99 Misc 2d 346) and Vermont, the home State, has not declined to exercise jurisdiction based on forum non conveniens grounds.
The sole basis of jurisdiction available in this proceeding therefore, is that found in section 75-d (subd 1, par [c]), and the petitioner contends that a bona fide emergency exists which requires this court to exercise jurisdiction in the interests of protecting the child. The petitioner has alleged that respondent is an alcoholic who has physically abused the child and who has on several occasions during recent visitation locked her out of the house late at night leaving her to wander the streets. Petitioner also contends that the child’s grandmother has not recovered sufficiently from her recent illnesses to be able to resume caring for her. Recorded testimony was taken of the child in camera by the court without the presence of counsel under the authority of Matter of Lincoln v Lincoln (24 NY2d 270). That, coupled with other sworn testimony received at a hearing and the well-considered report and recommendation of the child’s Law Guardian, convinces the court that immediate jeopardy to the child’s physical and mental well-being vests this court with jurisdiction under section 75-d (subd 1, par [c]). Furthermore, the respondent, though given the opportunity at the hearing, failed to come forward with any evidence to rebut or contradict petitioner’s proof. In a civil proceeding the court is permitted to draw the most unfavorable inferences from the failure of a party to testify to matters within his knowledge. *655 (See 21 NY Jur, Evidence, § 125, p 261; Dowling v Hastings, 211 NY 199; Matter of Semerad v City of Schenectady, 27 AD2d 673; Scivoletti v Leckie, 4 AD2d 773; Fingerhut v Kralyn Enterprises, 71 Misc 2d 846; Matter of Weaver, 58 Misc 2d 901.)
The court is cognizant of the limited purpose of the emergency jurisdiction provision in the UCCJA in that "[t]his extraordinary jurisdiction is reserved for extraordinary circumstances” (Commissioners’ Note to Uniform Act, 9 ULA [Master ed], p 124), and that it must not be misused to defeat the purposes of the act, but that provision nevertheless retains and reaffirms this court’s parens patriae responsibility for children in need of immediate protection. Because of the seriousness of petitioner’s allegations, supported by proof and uncontradicted by the respondent, and because of the question raised regarding the grandmother’s ability to care for the child during the pendency of this proceeding, this court concludes that it has jurisdiction based upon the immediate threat to the child’s physical and mental well-being and the child’s physical presence in this State.
RECOGNITION AND ENFORCEMENT OF THE VERMONT CUSTODY DECREE
Having ascertained that there is jurisdiction to entertain this custody petition, the court must next consider the effect of the Vermont custody decree made during the pendency of this proceeding. Before the enactment of the UCCJA it was the well-established rule that when the child was physically present in this State, New York courts were not bound by the custody award of a sister State, on the theory that the welfare of children transcends the strictures of the full faith and credit clause of the United States Constitution. (See Matter of Bachman v Mejias, 1 NY2d 575; Martin v Martin, 45 NY2d 739.) As a result, conflicting custody decrees often were rendered in two or more States and noncustodial parents seeking a friendly forum were encouraged to unlawfully retain their children after a visitation or unilaterally remove them from the State of the custodial parent’s residence.
The UCCJA seeks to remedy these ills, at least in part, by requiring the recognition and enforcement of a custody decree of "a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this article or which was made under factual circumstances *656 meeting the jurisdictional standards of this article” (Domestic Relations Law, § 75-n; emphasis supplied). The jurisdictional standards referred to by this section are those set out in section 75-d of the Domestic Relations Law which details the subject matter jurisdictional prerequisites which must be satisfied before this court may make a custody determination. (See Clark v Clark, 67 AD2d 388, 390; Commissioners’ Note to Uniform Act, 9 ULA [Master ed], p 151.) The fact that Vermont has not adopted the UCCJA is not determinative; there will be instances in which recognition and enforcement "is mandatory if the state in which the prior decree was rendered * * * has statutory jurisdictional requirements substantially like this Act, or * * * would have had jurisdiction under the facts of the case if this Act had been the law in the state.” (Commissioners’ Note to Uniform Act, 9 ULA [Master ed], p 151.)
The UCCJA was not intended to, however, nor could it, limit the due process requirements which must be satisfied before a sister State judgment may be afforded full faith and credit. (See Commissioners’ Note to Uniform Act, 9 ULA [Master ed], p 150; Griffin v Griffin, 327 US 220, reh den 328 US 876.) It has always been the general rule that before the full faith and credit clause of the United States Constitution "can become operative, the person to be affected thereby must have had his day in court or an opportunity to be heard.” (47 Am Jur 2d, Judgments, § 1222; Restatement, Conflicts 2d, § 92.)
It is undisputed that the petitioner before this court was not afforded notice and an opportunity to be heard in the Vermont proceeding. The present state of the law in the State of Vermont did not require the Vermont court to give notice to the petitioner since she has no standing there to be awarded custody of the child. Although she seems to have no rightful claim to custody of the child in the State of Vermont, she does possess the right to assert such a claim in New York State. Vermont may not extinguish that right without affording petitioner these basic due process protections. Therefore, even though Vermont was the child’s "home state” at the time the decree was rendered, and the Vermont court clearly would have had subject matter jurisdiction under section 75-d, this court is not required, either by the full faith and credit clause *657 or by the UCCJA,[1] to enforce the Vermont decree against this petitioner. (See Matter of Fernandez v Rodriguez, 97 Misc 2d 353.) As this court does not recognize and enforce the Vermont decree on due process grounds, it is unnecessary to determine whether it would be enforced under section 75-n if this petitioner had been afforded a full opportunity to be heard in the Vermont proceeding.
FORUM NON CONVENIENS
A court with jurisdiction under the UCCJA may nevertheless decline to exercise its jurisdiction if another State is a more appropriate forum and if it is in the best interest of the child that another State assume jurisdiction. Section 75-h of the Domestic Relations Law sets forth factors which the court may consider in making a forum non conveniens determination, including whether "another state is or recently was the child’s home state”,[2] whether "another state has a closer connection with the child and his family or with the child and one or more of the contestants” and whether "substantial evidence concerning the child’s present or future care, protection, training, and personal relationships is more readily available in another state”.
Vermont has been the "home state” of the child since 1974, a period of five years. The child’s residence in New York State prior to 1974 and the two-month period she has resided here with the petitioner have resulted in some contacts with this State, but Vermont certainly has a more complete and "closer connection” with the child and her family. In addition, more "substantial evidence” in the form of witnesses and other evidence is available in Vermont regarding the child’s past and future care and the respondent’s conduct and ability to provide adequate care and guidance. These were the considerations upon which this court initially determined that Vermont was a more appropriate forum to resolve this custody dispute, and upon which these proceedings were stayed pending the filing of a custody petition in Vermont. (See William L. v Michelle P., 99 Misc 2d 346, supra; Kern v Kern, 87 Cal *658 App 3d 402, supra.) Since that time, however, this court has been in communication with three different courts in Vermont,[3] and facts have come to light which require that jurisdiction be exercised in this State.
AVAILABILITY OF AN ALTERNATE FORUM
Based upon the information available concerning the current law in Vermont, this court must conclude that that State cannot provide these parties with an adequate alternate forum in which to resolve this custody dispute. This court has inquired of, and has received prompt and helpful replies from the presiding Judges of the Superior Court, the District Court, and the Probate Court of Bennington, Vermont, all of which have some jurisdiction to pass on issues involving the custody and/or guardianship of children.
The responses received by this court indicate that this petitioner, as the child’s second cousin, has no standing to petition any of the Vermont courts for her custody. The only procedure which appears to be available is a proceeding in the District Court based upon the abuse, neglect or delinquency of the child. The respondent has made a proposal that he transfer temporary custody of the child to her grandmother and that the child be returned to Vermont. Once the child is physically present in that State, a proceeding could be initiated pursuant to title 33 (§ 631 et seg.) of the Vermont Statutes Annotated by the Department of Social and Rehabilitative Services if, after an investigation, it believes that the child is neglected or delinquent. Should that department not initiate such a proceeding, section 645 of title 33 of the Vermont Statutes Annotated requires the Vermont State’s Attorney to "file a petition upon the request of any person who has knowledge of the facts alleged”. Upon a finding that the child is in "need of care or supervision,” a determination which is made on a showing of abandonment, abuse or parental neglect (Vermont Stats Ann, tit 33, § 632, subd [a], par *659 [12]), the District Court would continue the hearing and make an order "of disposition most suited to the protection and physical, mental and moral welfare of the child.” (Vermont Stats Ann, tit 33, § 656, subd [a].)
The court appreciates the efforts of counsel in providing affidavits to assist the court in determining the many serious questions raised in this proceeding, but for several reasons, I must conclude that the proposed procedure is an inadequate alternative to a plenary custody hearing between these parties. Although the child’s grandmother has filed an affidavit in which she consents to have the child reside with her during the pendency of any Vermont proceeding, it still has not been established that her health has improved and that she is now physically able to care for the child. Even if she were, it is doubtful that the procedural vehicle proposed by the respondent would satisfy the requirement of subdivision 4 of section 75-h of the Domestic Relations Law "that a forum will be available to the parties.” Although the court has been assured by letter from the Bennington County State’s Attorney that if the child is returned to Vermont, they will file a petition with the Vermont District Court alleging that she is a "child in need of care and supervision”, there are other differences between the proposed procedure and a plenary custody proceeding which are of serious concern to the court.
In spite of the stipulations which the respondent has offered to make in order to expedite this matter in the Vermont court, the fact remains that the proposed procedure is essentially a child protective type proceeding which would be initiated by an agency or by the State’s Attorney, rather than by this petitioner, who has no standing to file a petition in that court. Subdivision 3 of section 75-c of the Domestic Relations Law specifically excludes child protective type proceedings from the definition of "custody proceeding”. In addition, the dispositional alternatives available in Vermont vary from those available in this court, although we must assume that this petitioner would be a proper person to whom the Vermont court could award legal custody of the child as a discretionary alternative. (See Vermont Stats Ann, tit 33, § 656, subd [a], par [3], cl [B].) If she were awarded custody by that court, however, she would be required to initiate a biennial review of the court’s disposition which can result in a hearing, either on the motion of the court or on the request of any party. (See Vermont Stats Ann, tit 33, § 658.) No such *660 periodic defense of her status as the child’s custodian would be necessary in this State.
Of much more serious concern, however, is the extent to which this petitioner would be entitled to present evidence to the Vermont court. Although the respondent has stipulated that he would not oppose her status as a party, the court has had further communication with the Judge of the District Court who has indicated that she has no right to be joined, or to participate as, a full party in that court. She might be called as a witness by counsel assigned to represent the child, but such a procedure would leave her without control over the proceeding or the presentation of any relevant evidence. Both the case law construing the act and the act itself presuppose that a more appropriate forum will be available to the parties which will afford them a full opportunity to be heard on the merits. (See Domestic Relations Law, §§ 75-e, 75-h, subd 4; 75-k; Matter of Irene R. v Inez H., 96 Misc 2d 947.) The drafters of the act clearly envisioned that the State making a custody determination will hear evidence from all interested parties concerning the child’s best interests to "arrive at a fully informed judgment which transcends state lines and considers all claimants, residents and nonresidents on an equal basis and from the standpoint of the welfare of the child.” (Commissioners’ Prefatory Note to Uniform Act, 9 ULA [Master ed], p 114.)
Indeed, section 75-k of the Domestic Relations Law specifically mandates that the child’s physical custodian shall be joined as a party in any custody proceeding. The Commissioners’ Note to this section of the Uniform Act explains the purpose of this requirement: "The purpose of this section is to prevent re-litigations of the custody issue when these would be for the benefit of third claimants rather than the child. If the immediate controversy, for example, is between the parents, but relatives inside or outside the state also claim custody or have physical custody which may lead to a future claim on the child, they must be brought into the proceedings.” (9 ULA [Master ed], p 147.) A proceeding in which one of the current litigants has no right to fully participate, to present relevant evidence concerning the child’s best interests, or to appeal from an adverse decision, cannot be the type of alternate forum contemplated by the act. Furthermore, a decision by the Vermont court placing the child with anyone other than this petitioner would not serve the purpose of section 75-k of *661 the Domestic Relations Law of preventing relitigation, as it would not be binding on one not a party in that proceeding.
Based upon the foregoing considerations, this court will not exercise its discretion to defer to the jurisdiction of the Vermont court on the basis of forum non conveniens, as the proposed procedure does not assure "that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.” (Domestic Relations Law, § 75-h, subd 4.) If the court of the more appropriate forum is unwilling or unable, for whatever reason, to do justice between the parties and for the child, there is nothing to prevent this court from exercising its jurisdiction to decide the custody issue. (See Hricko v Stewart, 99 Misc 2d 266; see, also, Martin v Martin, 45 NY2d 739, supra.) Regardless of the act’s purpose of insuring greater custodial stability, the paramount concern still remains the best interests of the child (see Martin v Martin, supra; Vanneck v Vanneck, 68 AD2d 591, supra), and on the record before me I must determine that the child’s best interests require this court to exercise its jurisdiction in this custody proceeding.
Accordingly, this matter is adjourned for a hearing, the parties to be notified of the date. The court expresses no opinion concerning the merits of this case, but will point out that the law requires the petitioner, as a nonparent third party, to meet a heavy burden in order to obtain the relief requested. (See Matter of Bennett v Jeffries, 40 NY2d 543.)

. See, also, sections 75-e, 75-k and 75-m of the Domestic Relations Law, all of which clearly contemplate notice to the child’s physical custodian before that person can be bound by a custody decree.

. " 'Home state’ means the state in which the child at the time of the commencement of the proceeding, has resided with his parents, a parent, or a person acting as a parent, for at least six consecutive months.” (Domestic Relations Law, § 75-c, subd 5.)

. These communications were made in accordance with the expressed purposes of the UCCJA to "promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child” and to "promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child” (Domestic Relations Law, § 75-b, subd 1, pars [b], [h]; see, also, § 75-h, subd 4).