Jon M. SPAULDING

v.

Paula C. SPAULDING.

Supreme Judicial Court of Maine.

Argued March 11, 1983.

Decided June 6, 1983.

Cloutier, Joyce, Dumas & David, Edward S. David (orally), Livermore Falls, for plaintiff.

Hanscom & Carey, P.A., Thomas S. Carey (orally), Rumford, for defendant.

Before GODFREY, NICHOLS, CARTER, VIOLETTE and WATHEN, JJ.

VIOLETTE, Justice.

By decree dated May 23, 1979, the District Court of El Paso County, Colorado, dissolved the marriage of Jon and Paula Spaulding and awarded custody of Jimmy Spaulding, their only child, to Jon. The decree further provided that Paula Spaulding would be entitled to visitation from the hours of 4:30 P.M. until 7:30 P.M. on Tuesdays and Thursdays of each week and from 4:30 P.M. Saturday until 4:30 P.M. Sunday on each weekend. In making the custody award, the Colorado District Court found that both parents were fit and proper parents. The Court, however, accepted the recommendation of a welfare investigation report that it would be in the best interests of the child that permanent custody be granted to Jon.

Shortly after the decree was entered, the parties began feuding. The record reveals that the Colorado District Court was contin-

ually involved in attempting to settle the incessant squabbles between the parties over their rights with respect to Jimmy. In September of 1979, the Colorado District Court ordered a re-evaluation of its prior custody determination. On October 19, 1979, the Court reaffirmed its earlier ruling awarding custody of Jimmy to Jon and it ordered a new visitation schedule for Paula. The Colorado docket reflects that the judge planned further review in 1980. On April 2, 1980, the Colorado District Court appointed a guardian ad litem for Jimmy and the parties were ordered to contact Emergence, Inc.,[1] and proceed through a treatment program. On May 14, 1980, the Court appointed the Department of Social Services to act as a supervisor of Jimmy and to become directly involved with visitations. The Court also ordered that the Colorado Springs Police continue further investigative efforts regarding alleged child abuse. On July 2, 1980, the Colorado docket reflected that pending motions were to be continued for determination at a later date.

While those motions were still pending, Jon Spaulding and his new wife, Wendy Spaulding, left Colorado with Jimmy on July 5, 1980, and set out for Maine. The only notice given Paula Spaulding was a letter from Wendy Spaulding dated July 7, 1980, that stated in part:

> By the time you receive this letter well [sic] we will be on our way to start a new life out of the State of Colorado. The reason I am writing this letter is so you won't waste your time coming to our home to see Jimmy ... last of all don't try guessing where we could have moved to because your guess would be wrong and a waste of time.

The record indicates that Jon did not give notice to either his attorney of record or the Colorado District Court that he was leaving the State of Colorado.

Paula promptly moved the Colorado District Court to transfer custody of Jimmy from Jon to herself. Jon Spaulding's attor-

ney of record was notified on July 9th of a hearing to be held on July 11th and the attorney appeared at the hearing. Following the hearing, the District Court issued a decree on July 18, 1980, (effective July 11, 1980), transferring the custody of Jimmy from Jon to Paula Spaulding. The decree further provided that Jon was not to have visitation privileges until further order of the Court.

Sometime about August 1, 1980, Jon and Wendy Spaulding settled with Jimmy in Dixfield, Maine. On September 18, 1980, pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA), 19 M.R.S.A. §§ 801–825, Jon Spaulding filed in the District Court, Rumford, a certified copy of the May 1979 Colorado divorce decree awarding him custody of his child. After tracking down Jon, Paula filed in the same court on November 13, 1980, a petition pursuant to the same Act seeking enforcement of the July 18, 1980, modification decree entered in Colorado that awarded her custody of the child. The District Court denied Paula's petition on the following grounds: (1) Jon was not afforded reasonable notice pursuant to the UCCJA; (2) the decree was punitive; and (3) it would not be in the best interests of the child.

Paula then timely appealed to the Superior Court, Oxford County. The Superior Court reversed the decision of the District Court on the following grounds: (1) the District Court had no authority to modify the Colorado judgment or, under ordinary circumstances, refuse to enforce it pursuant to the UCCJA as adopted in Maine; (2) the Colorado decree was not issued ex parte, and, even if it was, that was not fatal to recognition by the District Court; and (3) the decree was not punitive. The Superior Court remanded the case to the District Court for enforcement of the Colorado modification decree dated July 18, 1980. It also ordered the District Court to determine Paula's costs and counsel fees incurred during the initial hearing in District Court.

---

1. From the record, it appears that Emergence, Inc., is a counseling service for divorced parents and their children.

Jon then appealed to this Court. That appeal was dismissed for lack of a final judgment. *Spaulding v. Spaulding,* 447 A.2d 64 (Me.1982).

The District Court subsequently entered an order awarding Paula attorney's fees, necessary travel expenses and costs of court. Jon timely appealed to the Superior Court from this order and from the remand order directing the District Court to enter judgment for Paula. Paula cross-appealed from certain orders of the District Court. Her cross-appeal was subsequently dismissed by agreement of the parties. On October 4, 1982, the Superior Court reaffirmed its earlier ruling that the Maine courts must recognize and enforce the Colorado modification decree dated July 18, 1980. Jon then appealed to this Court.[2]

The only question presented by this appeal is whether the Colorado modification decree dated July 18, 1980, must be enforced in Maine in the circumstances presented here. Plaintiff, Jon Spaulding, argues that enforcement should be denied because: (1) he was not given reasonable notice in accordance with the UCCJA in the Colorado proceedings; and (2) the Colorado decree was punitive. Because we conclude that the Maine Courts must enforce this decree pursuant to the UCCJA, we deny plaintiff's appeal and affirm the judgment of the Superior Court.

■ Maine adopted the UCCJA in 1979.[3] 19 M.R.S.A. §§ 801–825. The Act evolved from the growing public concern that a large number of children potentially suffer great emotional harm when they are shifted from state to state while their parents battle over custody.[4] Such shifting of children by parents in search of a more favorable forum deprives the children of a stable environment that is essential during the formative years. The Act attempts to guarantee reasonable security and continuity of environment by minimizing the relitigation of custody awards and by discouraging child abduction. It attempts to reduce jurisdictional conflicts between the various states by setting forth guidelines to assure that custody litigation occurs in the jurisdiction with which the child and parents have the closest ties. Other courts have aptly stated that the underlying purpose of the Act is to "eliminate jurisdictional fishing with children as bait." *Wheeler v. District Court,* 186 Colo. 218, 220, 526 P.2d 658, 660 (1974). It is imperative that we apply the provisions of this Act so as to further these policies.[5]

2. On this appeal, Jon did not raise any issues regarding the award of attorney's fees, necessary travel expenses and costs by the District Court.

3. After the instant action was commenced, Congress signed into law on December 28, 1980, the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A. The policies underlying the PKPA are the same as those underlying the UCCJA. The PKPA essentially provides that any child custody determination made consistently with the provisions of the PKPA is required to be enforced according to its terms by the Courts of every other state and the authorities of a state are not permitted to modify a decree of another state except as provided in subsection (f) of 28 U.S.C. § 1738A. Although the PKPA does not apply in the instant case, the result would be the same because the recognition provisions are essentially the same as those of the Maine Act. In the future, practitioners should be aware of the applicability of the PKPA to interstate child custody disputes. *See Pierce v. Pierce,* 640 P.2d 899 (Mont.1982); *State ex rel. Valles v.*

*Brown,* 97 N.M. 327, 639 P.2d 1181 (1981); *Leslie L.F. v. Constance F.,* 110 Misc.2d 86, 441 N.Y.S.2d 911 (1981); *Quenzer v. Quenzer,* 653 P.2d 295 (Wyo.1982).

4. *See generally,* Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws,* 22 Vand.L.Rev. 1207 (1969); Ehrenzweig, *The Interstate Child and Uniform Legislation: A Plea for Extralitigous Proceedings,* 64 Mich.L.Rev. 1 (1965); Foster and Freed, *Child Snatching and Custodial Fights: The Case for the Uniform Child Custody Jurisdiction Act,* 28 Hastings L.J. 1011 (1977).

5. 19 M.R.S.A. § 802(1) sets forth the general purposes of the Act as follows:

A. Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

B. Promote cooperation with the courts of other states to the end that a custody decree

Recognizing the compelling need to give a measure of finality to custody decrees in order to insure a more stable environment for the child, the Act requires Maine courts to recognize and enforce a custody decree of "a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this Act or which was made under factual circumstances meeting the jurisdictional standards of the Act . . . ." 19 M.R. S.A. § 814. Colorado adopted the UCCJA in 1973, Colo.Rev.Stat. §§ 14–13–101 to 14–13–126, and it remains in effect to this date. The Colorado District Court clearly had subject matter jurisdiction under section 14–13–104(1)(a)[6] when it rendered the modification decree on July 18, 1980, because Colorado was Jimmy Spaulding's "home state" as defined in section 14–13–103(5).[7] However, before the recognition and enforcement provisions can be applied, the initial decree must also have been entered in conformity with the notice requirements of the Act. *Yearta v. Scroggins,* 245 Ga. 831, 268 S.E.2d 151, 153 (1980). Therefore, even though Colorado had subject matter jurisdiction to render the decree, this state need not recognize that decree if the person to be affected did not have reasonable notice and opportunity to be heard. *See Wenz v. Schwartze,* 183 Mont. 166, 598 P.2d 1086, 1095 (Mont.1979), *cert. denied,* 444 U.S. 1071, 100 S.Ct. 1015, 62 L.Ed.2d 753 (1980); *Priscilla S. v. Albert B.,* 102 Misc.2d 650, 424 N.Y.S.2d 613 (Fam.Ct.1980).

Plaintiff first argues that the July 18th Colorado modification decree should be denied enforcement because he was not given reasonable notice as required by the Act in the Colorado proceeding. Although his attorney of record received notice of and appeared at the hearing, he contends that he was no longer represented by that attorney at that time, and, therefore, he concludes the hearing was essentially ex parte.[8]

---

is rendered in that state which can best decide the case in the interest of the child;

C. Assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training and personal relationships is most readily available, and that courts of this State decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

D. Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

E. Deter abductions and other unilateral removals of children undertaken to obtain custody awards;

F. Avoid re-litigation of custody decisions of other states in this State insofar as feasible;

G. Facilitate the enforcement of custody decrees of other states;

H. Promote and expand the exchange of information and other forms of mutual assistance between the courts of this State and those of other states concerned with the same child; and

I. Make uniform the law of those states which enact it.

6. Section 14–13–104(1)(a) provides in part:

A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if: This state is the home state of the child at the time of commencement of the proceeding, or had been the child's home state within six months before commencement of the proceeding, and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state . . . .

7. Section 14–13–103(5) provides in relevant part:

'Home State' means the state in which the child immediately preceding the time involved lived with his parents, a parent, or person acting as parent, for at least six consecutive months . . . . Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.

8. The Colorado Supreme Court has held that ex parte orders changing custody of children are void. *Parker v. Parker,* 142 Colo. 416, 350 P.2d 1067 (1960); *see also Olson v. Priest,* 193 Colo. 222, 564 P.2d 122 (1977) (lacking evidence that irreparable injury would result to child, temporary change in custody after an ex parte hearing was void because it deprived person to be affected of notice and opportunity to be heard). Had this record revealed that the decree was issued ex parte, then we would not be required to enforce the decree.

As an initial matter, Colorado courts are the proper forum for Jon to challenge the sufficiency of notice. Because the record before us does not reveal whether this issue was ever raised before the Colorado District Court,[9] we must determine whether, in the circumstances of this case, the notice was sufficient under Colorado law. *See Miller v. Superior Court,* 22 Cal.3d 923, 928, 151 Cal.Rptr. 6, 8, 587 P.2d 723, 726 (1978); *Lopez v. District Court,* 199 Colo. 207, 606 P.2d 853 (1980). If on reviewing the record, we find that the notice was inadequate under Colorado law, then we are not required to enforce this decree.

At the time the modification proceeding commenced, the pertinent notice provision of the UCCJA under Colorado law was Colo.Rev.Stat. § 14–13–105. That section provides in relevant part: "Before making a decree under this article, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated, and any person who has physical custody of the child." This statutory provision does not detail the methods by which notice can be served and, therefore, we must look to the Colorado rules of procedure to determine if the notice in the instant case was adequate.[10] Citing Colo.R. Civ.P. 5(b), defendant Paula Spaulding claims that service on plaintiff's attorney of record was adequate notice in the circumstances of this case. Colo.R.Civ.P. 5(b) provides in relevant part: "Whenever under these rules service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless service upon the party himself is ordered by the court." As relevant

here, Colo.R.Civ.P. 5(a) provides: "Except as otherwise provided in these rules . . . every written motion other than one which may be heard ex parte, and every written notice . . . shall be served upon each of the parties." A review of Colorado case law further reveals that Rule 5(b) has been applied in a case factually similar to the instant case. *See Pearson v. Pearson,* 141 Colo. 336, 347 P.2d 779 (1959). In *Pearson,* just as in this case, a custodial parent (the mother) departed from Colorado leaving a note that "she was leaving and not to try to find her." The father filed a motion to modify the interlocutory decree of divorce which granted custody to the mother. Notice of this motion was served on the mother's counsel of record. Her counsel appeared at the hearing and represented that he did not know her whereabouts so that she could be notified of pendency of the action. The Court subsequently modified the decree to grant the father custody of the children. On appeal, the mother argued that the notice was invalid because service was upon counsel who at that time no longer represented her. The Colorado Supreme Court held that service of notice on the mother's counsel of record pursuant to Rule 5(b) was valid in these circumstances. *Pearson,* 141 Colo. at 341, 347 P.2d at 783.[11]

We agree with defendant that service on plaintiff's attorney of record in the circumstances of this case constituted adequate and reasonable notice under Colorado law. In the instant case, the Colorado District Court was continually involved in custody disputes between these parties after the initial decree was entered in May of 1979. Plaintiff was represented by the same attorney throughout the post-divorce proceed-

---

**9.** Had the record disclosed that the notice question was fully and fairly litigated, then the Colorado judgment would clearly be entitled to full faith and credit. *See O'Malley v. O'Malley,* 338 A.2d 149, 154 (Me.1975).

**10.** The Comments to the Act provide that notice to persons in the forum state is given in accordance with the general law of that state. *Uniform Child Custody Jurisdiction Act* § 4, 9 U.L.A. 130 (1979).

**11.** The *Pearson* Court, however, reversed the judgment modifying the interlocutory decree because it determined that there was no evidence offered to show the mother was unfit or that the welfare of the children demanded a change in custody. *See also Deines v. Deines,* 157 Colo. 363, 402 P.2d 602 (1965). This Court, however, can only review whether the Colorado court properly had jurisdiction to enter its decree when a party seeks to have the courts of this State enforce a Colorado decree. We cannot review the merits of the Colorado action.

ings. Furthermore, this attorney was still acting on his behalf only one week before service of notice of the July 11th hearing on modification of the decree. The Colorado District Court docket reveals that, on July 2, 1980, pending motions were to be continued for determination at a later date.[12] Only three days later, while those motions were still pending, plaintiff departed from Colorado with the child, leaving only a note to Paula that indicated it would be a waste of time to try and locate them. The record of the Colorado proceedings fails to indicate that he notified either the Court or his attorney that he no longer was to be represented by his then attorney of record.[13] Furthermore, not only did his attorney of record receive notice of the hearing, but he appeared at the hearing and, according to the decree entered on July 18, 1980, and the Colorado docket, he made a statement at that hearing.[14] Accordingly, in the circumstances presented here, we conclude that plaintiff received reasonable notice in the Colorado proceedings pursuant to the UCCJA, Colo.Rev.Stat. §.14–13–105.

 Plaintiff next argues that this Court should not recognize the July 18th Colorado modification decree because it was issued solely to punish him for leaving the jurisdiction with Jimmy and the decree ignored the best interests of the child. We agree with plaintiff that if this decree was issued solely to punish him, then we could deny enforcement. Many jurisdictions which have adopted the UCCJA refuse to recognize and enforce a decree designed to punish a custodial parent for leaving the jurisdiction, rather than to protect and preserve the welfare of the child. *Slidell v. Valentine,* 298 N.W.2d 599, 605 (Iowa 1981); *In Re Lemond,* 395 N.E.2d 1287, 1291 (Ind. App.1974); *Holt v. District Court,* 626 P.2d 1336, 1343–44 (Okla., 1981); *Brooks v. Brooks,* 20 Or.App. 43, 530 P.2d 547, 551 (1975); *see generally* Bodenheimer, *Progress under the Uniform Child Custody Jurisdiction Act and Remaining Problems: Punitive Decrees, Joint Custody and Excessive Modification,* 65 Cal.L.Rev. 978, 1002–04 (1977). Although the Uniform Act itself does not explicitly provide an exception for

---

12. In the instant case, the Maine District Court requested the Colorado District Court to send a record of the Colorado proceedings; the Colorado District Court responded by sending several documents, including a certified copy of the Colorado District Court docket. Plaintiff contends that the documents acquired by the Maine District Court have no evidentiary value and, therefore, they cannot be considered on appeal. Plaintiff seems to argue that the documents cannot be considered evidence because they were not submitted into evidence at the hearing before the Maine District Court. Plaintiff's arguments on this point are not entirely clear and, in fact, he concedes that the trial court properly acquired these documents. In any event, his contention is meritless. When "a custody decree has been rendered in another state concerning a child involved in a custody proceeding pending in a Court of this State", the UCCJA requires the court of this state to request a certified copy of any court record and other documents mentioned in section 822. 19 M.R.S.A. § 823. By requiring the Maine Court to request a record of the proceedings from a sister state, the UCCJA stresses the importance of the record of the Colorado proceedings in a case such as this. *See generally* 19 M.R.S.A. §§ 819–823 (sections that generally provide for cooperation between the states). Therefore, these documents could properly be considered by the Maine District Court and it either did or

should have realized their importance to this matter.

13. Cf. *Thompson v. McCormick,* 138 Colo. 434, 335 P.2d 265 (1959) (holding that attorneys who had once entered an appearance for a litigant and were thereafter discharged were not agents of the litigants for service of notice when the trial court refused to prevent the withdrawal of their appearance, even though they were required to remain attorneys of record).

14. The July 18th, 1980, Colorado modification decree provides in relevant part:

THIS MATTER having come on for hearing July 11, 1980, Petitioner appearing by Thomas R. Cross, attorney of record; Respondent appearing in person and by Leo W. Rector, attorney of record; and the Court having heard the evidence adduced, examined the exhibit, heard the statements of counsel and considered previous evidence having been adduced in the ongoing supervision by the Court of the custody of the minor child of the parties; and being otherwise fully advised
. . . .

The Colorado docket similarly provides that statements were made by counsel on July 11, 1980.

punitive decrees, the comments to the Act and its underlying policies do support such an exception. *Uniform Child Custody Jurisdiction Act* § 13, 9 U.L.A. 152 (1979); Bodenheimer, 65 Cal.L.Rev., *supra,* at 1006.[15]

This principle, however, is narrow; foreign decrees are punitive only if a sister state changes or awards custody, without regard to the best interest of the child, solely to punish one parent for disregarding its authority. Bodenheimer, 65 Cal.L.Rev., *supra,* at 1006–07 (Principle applies only when a court deprives a parent of custody primarily on the ground that he or she violated some provision of prior decree or moved from jurisdiction, whether or not the departure contravened a court order, and not merely because a decree reflects that the court disapproves of a parent's conduct); Bodenheimer, 22 Vand.L.Rev., *supra,* at 1238. The previously cited Oregon case of *Brooks,* 20 Or.App. at 43, 530 P.2d at 552, is instructive on this issue. There, a Montana court modified a prior decree without taking any evidence as to the circumstances of the children and solely on the basis of the father's allegations that the mother interfered with his legal rights of visitation and periodic custody by leaving the jurisdiction with the children without giving notice of their whereabouts. The Oregon Court held that, in those circumstances, the order was punitive because it was issued only to discipline the mother, and, therefore, the Oregon Court denied enforcement of the Montana decree.

In the instant case, the only part of the record before us which sheds light on this issue is the July 18th modification decree itself. That decree initially states:

[T]he Court having heard the evidence adduced, examined the exhibit, heard the statements of counsel and considered previous evidence having been adduced in the ongoing supervision by the Court of the custody of the minor child of the parties . . . .

As discussed previously, the Colorado District Court had been continually called upon to settle disputes between these two parties with regard to their custody rights. The decree at issue was not solely based on the evidence that Jon had departed with Jimmy without giving notice of his whereabouts, but it was based on an evaluation of this new evidence in light of the prior evidence that had come before the Court during its continuing supervision. Therefore, unlike cases such as *Brooks,* 20 Or.App. at 43, 530 P.2d at 551, the Colorado District Court was evaluating the effect of the departure in light of already existing facts and not solely basing its decree on the fact that Jon departed with the child.

After setting forth the history of the proceedings, the Colorado Court set forth the following reasons for its decision to change custody to Paula:

[I]t is contrary to the best interests of the child that the child be away from the supervision of this Court and subjected to a circumstance which would deprive the mother of her .visitation and thereby information as to what was occurring with the child's growth and development. The Court finds that the acts of Jon M. Spaulding are reprehensible and in willful disobedience to the Orders of this Court and a detriment to the emotional development of the child and, in fact, may jeopardize the physical and mental well being of the said child. That the said Jon M. Spaulding has demonstrated his willingness to disobey other Orders of this Court and thereby has demonstrated his unfitness to be the custodial parent of this child and the child's welfare would best be served by being awarded to the mother with no visitation whatsoever to Jon and Wendy . . . until further Order of the Court.

On its face, although the decree refers to Jon's having disobeyed orders of the Court, the decree is primarily based on the best interests of the child. It is troubling, how-

---

**15.** We recently upheld a Superior Court reversal of a District Court judgment on the ground that the District Court changed custody solely to punish the custodial parent. *Huff v. Huff,* 444 A.2d 396, 398 (Me.1982).

ever, that Jon will be deprived of visitation rights until further order of the Court. This provision seems to be punitive in nature. The Colorado Court, however, concluded this would be in the best interests of the child. Even though it did not explain why that would be so, we must presume that the Court acted properly where, as here, we do not have a transcript of those proceedings. *See In Re Marriage of Steiner*, 152 Cal.Rptr. 612, 616, 89 Cal.App.3d 363, 370 (1979); *In Re Lemond*, 395 N.E.2d at 1291–92; *Holt*, 626 P.2d at 1344. The Colorado Court may have concluded that it would be inappropriate to order a visitation schedule without having Jon before it. From the face of the decree it is clear that the Colorado District Court considered the best interests of the child when it changed custody and it did not solely change custody because it was insulted by Jon's disregarding its authority. Accordingly, we conclude that the July 18th modification decree was not punitive.

In conclusion, the July 18th Colorado modification decree was rendered in accordance with the jurisdiction provisions of the UCCJA and the decree was not issued to punish Jon. The UCCJA as adopted by Maine sets forth the policy that, in these circumstances, the best interests of the child are furthered by enforcing this decree.[16] *See* 19 M.R.S.A. § 802(1)(B), (E), (F), (G);[17] *see generally In Re Hopson*, 110 Cal.App.3d 884, 895–96, 168 Cal.Rptr. 345, 353 (1980); *Kraft v. District Court*, 197 Colo. 10, 12–13, 593 P.2d 321, 323 (1979); *Yearta*, 245 Ga. at 832–33, 268 S.E.2d at 153; *Slidell*, 298 N.W.2d at 601–02; *Kaiser v. McClendon*, 230 Kan. 472, 639 P.2d 39 (1982). Accordingly, we have no choice but to enforce this decree pursuant to 19 M.R.S.A. § 814.

The entry is:

16. Maine Courts can stay enforcement of a sister state's decree if it would operate to cause serious harm to the child. *See Kaiser v. McClendon*, 230 Kan. 472, 474, 639 P.2d 39, 47 (1982); *McDonald v. McDonald*, 74 Mich.App. 119, 253 N.W.2d 678, 684 (1977); *Holt v. District Court*, 626 P.2d 1336, 1346 (Okla.1981).

Appeal denied.
Judgment affirmed.

All concurring.

This requires more than a contrary finding as to the best interests of the child. Plaintiff did not claim that serious harm would befall the child if the District Court recognized and enforced the instant decree.

17. *See supra* note 5 for text of these provisions.