447 So.2d 335 (1984)
Jose Antonio HERRERO, Appellant,
v.
Adriana MATAS, Appellee.
No. 83-2084.
District Court of Appeal of Florida, Third District.
February 28, 1984.
Rehearing Denied April 9, 1984.
Starr W. Horton, Miami, for appellant.
Cuadrado & Sosby and Manuel A. Cuadrado, Miami, for appellee.
Before HUBBART, NESBITT, and DANIEL S. PEARSON, JJ.
NESBITT, Judge.
Herrero appeals a nonfinal order denying his petition for writ of habeas corpus *336 to regain custody of his daughter.[1] We have jurisdiction. Fla.R.App.P. 9.130(a)(3) (C)(iii).
Herrero (the father) and Matas (the mother) were married and divorced in San Juan, Puerto Rico. Their marital domicile was Puerto Rico. Their child was born in Puerto Rico. When Herrero and Matas were divorced, in 1976, Matas was awarded custody of the child. Within one year from the divorce, Matas moved to Miami with her daughter.
In 1981, Matas agreed to give Herrero temporary custody of the child. Herrero took their daughter to the Dominican Republic, where he was residing. At the end of that school year, Matas filed a motion in the Puerto Rican court to have Herrero held in contempt for his failure to return the child. Herrero countered with a petition for custody. At that time, the Puerto Rico court modified the original decree and granted split custody.
In January, 1983, Matas once again sought to have Herrero held in contempt by the Puerto Rican court. Herrero countered with yet another petition for custody. This petition contained allegations that a modification in the custody arrangement would be in the child's best interest because Matas' new husband had abused the child. Herrero was temporarily awarded custody, pending a final hearing to be held upon the completion of psychiatric and social worker's reports.
Prior to that final hearing, Matas moved the Puerto Rican court to enforce her right to have the child visit her on Mother's Day. Herrero sent the child to Miami for a visit. Matas then kept the child and filed a petition in the Dade Circuit court to modify the Puerto Rican judgment. Subsequently, the Puerto Rican court held its final hearing and entered an order awarding custody to Herrero. The Dade Circuit court entered an order finding jurisdiction and denying Herrero's petition for writ of habeas corpus. We reverse.
The propriety of a Florida court's exercise of jurisdiction in this matter is governed by the Uniform Child Custody Jurisdiction Act (hereinafter `the Act'), codified in Florida at sections 61.1301-61.1348, Florida Statutes (1983). The purposes of the act are to avoid jurisdictional competition and conflict, promote cooperation among the states so that the state best able to protect the interests of the child renders the custody decree, and to assure that the state with the closest connection to the parties is the state where the litigation takes place. In addition, the act was designed to promote stability by discouraging continuing controversies over child custody, to deter abductions of children undertaken to facilitate changes in custody, and to promote the exchange of information and mutual assistance between courts of the various states. § 61.1304, Fla. Stat. (1981). See also Burch v. Burch, 424 So.2d 187, 189 (Fla. 4th DCA 1983); Trujillo v. Trujillo, 378 So.2d 812, 814 (Fla. 3d DCA 1980).
The act provides that no Florida court shall exercise jurisdiction if, when the petition was filed in Florida, a proceeding concerning custody of the child was already pending in a court of another state exercising jurisdiction substantially in conformity with the act. § 61.1314, Fla. Stat. (1981). There are three ways in which a state may proceed in substantial conformity with the act. The first way, of course, is when the other state has also enacted the act. Alternatively, proceeding under a statute which is similar to the act will satisfy the test of substantial conformity. Finally, in the absence of any statute, the standard of substantial compliance is satisfied when the court would have had jurisdiction if the other state had enacted the act. See Hernandez v. Hernandez, 406 So.2d 513 (Fla. 3d DCA 1981) (remanding for hearing on whether Texas exercised jurisdiction in conformity with the act since Texas had not enacted the act). See also *337 Bergstrom v. Bergstrom, 271 N.W.2d 546, 551 (N.D. 1978); Priscilla S. v. Albert B., 102 Misc.2d 650, 424 N.Y.S.2d 613 (N.Y. Fam. Ct. 1980).
Puerto Rico has not adopted the act and counsel informs us that there is no similar statute. However, under the facts of this case, Puerto Rico would have had jurisdiction under section 61.1308(1)(b), Florida Statutes (1981) if the act were in force there. That section provides that a court may exercise jurisdiction if one of the contestants has significant contacts with the state and it is in the child's best interest to proceed because there is substantial evidence in the state relating to the child's care and welfare. While the act has not abrogated the preference for continuing jurisdiction in the state which entered the original decree, see Bodenheimer, Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA, 14 Family L.Q. 203 (1981), the significant connection requirement of section 61.1308(1)(b) is not met by a mere showing that the state assuming jurisdiction rendered the original decree. Findley v. Findley, 441 So.2d 1166 (Fla. 2d DCA 1983); Nelson v. Nelson, 433 So.2d 1015 (Fla. 3d DCA 1983); Matteson v. Matteson, 379 So.2d 677 (Fla. 2d DCA 1980). Rather the preference for continuing jurisdiction exists only where the state which entered the original decree continues to have jurisdiction because it has satisfied the jurisdiction prerequisites of section 61.1308.
Turning to those prerequisites, we conclude that the child and her father had a significant contact with Puerto Rico. Matas has filed proceedings in regard to custody three times since the original decree was entered. Thus, the Puerto Rican court has remained apprised of all the aspects of this litigation.[2] The fact that the Puerto Rican court has remained actively involved in this custody battle is also important in determining whether a Puerto Rican proceeding would be in the best interest of the child. The Puerto Rican court already had substantial evidence concerning the child's welfare. Indeed, the Puerto Rican court had ordered thorough reports on the current family situation. These reports were being prepared for the court when Matas filed in the Dade circuit court.
Since Puerto Rico acted in substantial conformity with the act in this case, the Dade circuit court should have declined to exercise jurisdiction. This cause is remanded with instructions to enter an order that the child be returned to the custody of Mr. Herrero and an order dismissing the proceedings to modify the Puerto Rican decree.
NOTES
[1] Habeas corpus is an extraordinary remedy which was not appropriate in this case. We treat the petition as a petition for change of custody. See Trujillo v. Trujillo, 378 So.2d 812, 815, n. 18 (Fla. 3d DCA 1980).
[2] Furthermore, it would defeat the salutary purposes of the act for a Florida court to exercise jurisdiction when the party who filed in Florida had filed elsewhere and lost. Mondy v. Mondy, 428 So.2d 235 (Fla. 1983); Detko/Roberts v. Stikelether, 370 So.2d 383 (Fla. 4th DCA 1979).